### Robert Richard WIGHTMAN

v.

### Edith JONES, U.S. Circuit Judge; Patrick E. Higginbotham, U.S. Circuit Judge; Thomas Reavley, U.S. Circuit Judge; Samuel Kent, U.S. District Judge.

### No. CA-4-91-722-E.

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 7, 1992.

---

Robert Richard Wightman, pro se.

Randell P. Means, U.S. Attorney's Office, Ft. Worth, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

Now before the Court is the defendants' motion to dismiss to which the plaintiff has responded. After having reviewed the motion, the response and the applicable law, the Court determines that this motion should be granted.

## BACKGROUND

On or about March 20, 1990, the plaintiff in this action, Mr. Robert Wightman ("Wightman"), filed an action in the United States District Court for the Southern District of Texas, Houston Division, styled *Wightman v. Mattox*, CA H–90–944, alleging that § 21.06 of the Texas Penal Code violated numerous constitutional rights of the plaintiff. This action was transferred to the court of the Honorable Judge Rainey on or about May 29, 1990, then transferred to the court of the Honorable Samuel Kent on or about November 9, 1990. On or about December 10, 1990, Judge Kent stayed this cause of action in order to review the findings of fact and conclusions of law issued by State District Judge Davis in the 200th Judicial District Court of Travis County, Texas, holding § 21.06 of the Texas Penal Code unconstitutional. The purpose of the stay, as stated in Judge Kent's order, was to allow time to determine whether the decision in the case before Judge Davis rendered the action before Judge Kent moot. On or about March 18, 1991, plaintiff filed a notice of appeal from Judge Kent's order staying proceedings in that case. On May 1, 1991, a three judge panel of the Fifth Circuit consisting of the Honorable Edith Jones, the Honorable Patrick E. Higginbotham, and the Honorable Thomas Reavley, on their own motion, dismissed the plaintiff's appeal based on lack of jurisdiction. On or about June 28, 1991, the United States Supreme Court denied plaintiff's Petition for Writ of Certiorari —— U.S. ——, 111 S.Ct. 2902, 115 L.Ed.2d 1066. On October 15, 1991, Wightman filed the present action against Judges Edith Jones, Patrick Higginbotham, Thomas Reavley, and Samuel Kent. He alleged that the defendants violated his constitutionally protected rights of redress and due process by entering illegal orders either staying his action or dismissing his appeal in an attempt to deny Wightman, as a homosexual, access to the United States courts. The plaintiff seeks declaratory and injunctive relief.

## DISCUSSION

At the outset, the Court notes that as the defendants in this action were at all times acting under color of federal law, the constitutional violations complained of are properly characterized as direct constitutional tort claims under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

# 476

## JUDICIAL IMMUNITY

■ The defendants, in their motion to dismiss, argue that the doctrine of absolute judicial immunity bars this action and requires dismissal as to all defendants. Judges are absolutely immune from liability for damages for judicial acts "that are not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive." *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir.), *cert. denied*, 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989). The plaintiff argues, however, that while judges are normally absolutely immune from liability for damages, judges are not immune from declaratory and injunctive relief. The Court must therefore determine whether the acts complained of are subject to judicial immunity, and if so, whether these judges are immune from the type of relief sought under these circumstances.

■ It is not contested that the acts complained of were judicial. The Fifth Circuit weighs four factors in determining whether an act is "judicial". These factors are as follows: (1) whether the specific act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or in an appropriate related space such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *McAlester v. Brown*, 469 F.2d 1280 (5th Cir.1972). These factors are construed liberally in favor of immunity. *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir.1985). Assuming all of the facts alleged by the plaintiff to be true, Judge Kent's act of entering the order staying the action before him meets all of the criteria for a "judicial" act, as does the act by Judges Jones, Higginbotham, and Reavley of dismissing Wightman's appeal before the Fifth Circuit. Additionally, it cannot be said that any of these acts were taken in clear absence of jurisdiction.

Clearly, Judge Kent had the jurisdiction to enter an order staying an action before him and Judges Jones, Higginbotham, and Reavley had jurisdiction to enter an order dismissing an appeal before their panel.

Accordingly, the Court finds that as a matter of law, the acts of the defendants which are complained of in this action were judicial acts that were not undertaken in clear absence of jurisdiction.

## JUDICIAL IMMUNITY FROM DECLARATORY AND INJUNCTIVE RELIEF

■ The plaintiff argues that judicial immunity for constitutional violations does not extend to suits for declaratory and injunctive relief. In fact, it is now established that in the context of a claim under 42 U.S.C. § 1983, absolute judicial immunity does not bar such equitable relief against state court judges. *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984); *Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1219 (5th Cir.1991). However, whether the exception to absolute judicial immunity recognized in *Pulliam* applies or whether judicial immunity bars declaratory and injunctive relief in a *Bivens* action apparently has not been addressed by either the United States Supreme Court or the Fifth Circuit. While two circuit court decisions have addressed this issue, only the Ninth Circuit's decision in *Mullis v. U.S. Bankruptcy Court, Dist. of Nevada*, 828 F.2d 1385 (9th Cir.1987) gave this issue substantial consideration.[1] In *Mullis*, the Ninth Circuit held that judicial immunity did indeed bar equitable relief against federal court judges in the context of a *Bivens* action. Accordingly, this Court must determine whether the persuasive reasoning behind the decision in *Mullis* is indeed correct or whether the reasoning of *Pulliam* in the context of a § 1983 action is equally applicable to a *Bivens* action.

As was stated previously, the Supreme Court, in a 5–4 decision, determined that absolute judicial immunity did not extend

---

**1.** The other circuit court case addressing this issue is *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir.1987). In that case, the Court, in dicta, simply cited *Pulliam* for the proposition that an

"official's entitlement to absolute immunity from a claim for damages does not bar the granting of injunctive relief." *Dorman*, at 139.

to protect state judges from prospective injunctive relief under 42 U.S.C. § 1983. The Court based its decision on two factors. First, they determined that an analysis of the common law, from which our concept of judicial immunity is derived, did not support the conclusion that judicial immunity should extend to prospective collateral relief against state law judges. Second, noting the necessity of ascertaining Congress' intent regarding the reach of 42 U.S.C. § 1983, the Court determined that Congress did not intend to in any way limit the injunctive relief available against state court judges under § 1983.

## COMMON LAW ANALYSIS

In reviewing the common law practice concerning judicial immunity from prospective injunctive relief, the Supreme Court first noted that at common law there was no such thing as an injunction against a judge; hence, there was no discussion in the common law regarding judicial immunity from injunctions. *Pulliam*, 466 U.S. at 530, 104 S.Ct. at 1975. Unable to identify an identical situation at common law, the Supreme Court instead had to draw an analogy to a common-law parallel to an injunction issued in a § 1983 context—collateral prospective relief through the King's prerogative writs. *Id.* The Supreme Court's discussion concentrated on the writs of prohibition and mandamus which allowed the King's Bench—a common law court—to exercise control over inferior and rival courts.[2] *Id.* at 532, 104 S.Ct. at 1975. These injunctive-type writs, which could be granted by one judge against another, existed at the same time as the principle barring the prosecution of a common law judge for an action the judge took within the court's jurisdiction—judicial immunity. *Id.* at 531, 104 S.Ct. at 1975. Based on this, the Supreme Court concluded that at common law, there was no inconsistency between the principle of judicial immunity and the type of injunctive relief offered under the writs of prohibition and mandamus. The Supreme Court then

analogized the relationship between the King's Bench and its rival and inferior courts to the relationship between the federal courts and the state courts in our current system. *Id.* at 535–36, 104 S.Ct. at 1977–78. Based on this analogy, the court concluded that just as judicial immunity at common law did not preclude a judge of the King's Court from issuing collateral injunctive relief against an inferior or rival court judge, so should judicial immunity not preclude a federal court from granting injunctive relief against a state court judge. *Id.* at 536, 104 S.Ct. at 1978.

Having reviewed the common law analysis of the Supreme Court in *Pulliam*, this Court determines that, far from compelling the same outcome in a *Bivens* action, the common law supports a finding of judicial immunity from equitable relief in a *Bivens* action. The Supreme Court's common law analysis is based on an analogy of the relationships between the King's Bench and its rival and inferior courts on the one hand and the federal and state court systems on the other. The Court determined that just as the King's Bench could issue a writ much like an injunction against an ecclesiastical court without offending the common law notion of judicial immunity, so could a federal court issue an injunction against a state court judge under § 1983 without offending judicial immunity.

In the context of a *Bivens* action, however, any collateral injunctive relief would be issued by one federal judge against another equal or superior federal judge. The closest common law analogy to this situation would be that of one judge of the King's Bench issuing a King's prerogative writ against another equal or superior judge of the King's Bench. However, this type of collateral review of judges of the King's Bench was not permitted at common law. The King's prerogative writs could only be used to exercise control over collateral or inferior courts, not equal or superior common law courts. *Pulliam*, 466 U.S.

---

2. The inferior courts consisted of other common law courts over which they had appellate jurisdiction while the rival courts consisted of the Council, the Star Chamber, the Chancery,

the Admiralty, and the ecclesiastical courts. *See Pulliam v. Allen* 466 U.S. at 530, 532, 104 S.Ct. at 1975, 1976.

at 536, n. 14, 104 S.Ct. at 1978, n. 14. Accordingly, the analogy used by the court in *Pulliam* cannot be extrapolated to the context of a *Bivens* action to support a limitation of judicial immunity. Using such an analogy in the *Bivens* context can only highlight the wisdom of a contrary rule.[3]

The common law history of judicial immunity, as set out in both the majority and dissenting opinions in the *Pulliam* decision, is not in any way inconsistent with a finding of judicial immunity from declaratory and injunctive relief at common law. In *Floyd and Barker*, 12 Co.Rep. 23, 77 Eng. Rep. 1305 (1607), Lord Coke and the other judges of the Star Chamber declared that the King's Bench judges were immune from suit in competing courts for their judicial acts. As an injunction against a judge did not exist at common law,[4] the immunity from liability from damages amounted to a rule of absolute judicial immunity from suit.[5] Unlike the situation in *Pulliam* in which the Court demonstrated support for a limitation on judicial immunity, there is no support for a similar limitation in the context of a *Bivens* action. Thus, this Court's analysis of the common law is both consistent with and supportive of a principle of judicial immunity from injunctive and declaratory relief in the context of a *Bivens* action.

## CONGRESSIONAL INTENT

The second basis for the Supreme Court's decision in *Pulliam* was the fact that it was clear that Congress intended for § 1983 to apply to all state actors, including judges. The Congress felt that some remedy against state judges was necessary because "state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights." *Pulliam*, 466

U.S. at 540, 104 S.Ct. at 1980, *quoting Mitchum v. Foster*, 407 U.S. 225, 240, 92 S.Ct. 2151, 2161, 32 L.Ed.2d 705 (1972). While the *Pulliam* Court felt that it was no longer proper to assume that state judges would not earnestly seek to protect federal rights, the court nonetheless determined that Congress' intent upon passage of § 1983 was to provide an "independent protection for federal rights." *Pulliam*, 466 U.S. at 541, 104 S.Ct. at 1981.

An action for violation of federal rights under color of federal law, however, is judicially created. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). As the *Bivens* cause of action was not created by Congress, there is no Congressional intent that the normal rule of absolute judicial immunity be abrogated for equitable relief brought under this theory. In *Mullis*, at 1394, the Ninth Circuit concluded from this lack of Congressional intent that, "(t)he reasoning of *Pulliam* simply is inapplicable to a *Bivens* action. There is no need to carve out an exception to judicial immunity to permit declaratory and injunctive relief against federal judicial officers." On the contrary, allowing the judicially created *Bivens* action to be used to seek an injunction from one federal court against the judge of another for a judicial act would frustrate the Congressional intent in detailing the specific methods of attacking a judicial action through appeal or extraordinary writ by adding a collateral method of attacking judicial action. As was stated by the Ninth Circuit in *Mullis*:

Congress has provided carefully structured procedures for taking appeals, including interlocutory appeals, and for petitioning for extraordinary writs in Title 28 of the United States Code. Through

---

3. Just as the wisdom of preventing one judge of a King's Bench court from issuing a writ against an equal or superior King's Bench court judge was clear to the molders of the common law, so should the wisdom of preventing a federal court from being able to issue an injunction against an equal or superior federal court judge be recognized by the molders of the federal common law.

4. *Pulliam*, 466 U.S. at 529, 104 S.Ct. at 1974.

5. In *Mullis*, at 1394, the court acted under the assumption that absolute judicial immunity is the rule to which *Pulliam* was an exception.

these procedures, a litigant ... receives full federal court review of allegations of deprivations of federal constitutional rights by federal judicial officers acting under color of federal law. To allow an action for declaratory and injunctive relief against federal officials who would be entitled to judicial immunity from damages merely engenders unnecessary confusion and a multiplicity of litigation.

*Mullis v. U.S. Bankruptcy Court, Dist. of Nevada,* 828 F.2d 1385, 1394 (9th Cir.1987).

Accordingly, the principle of deference to Congressional intent weighs in favor of a determination that judicial immunity bars equitable relief in the context of a *Bivens* action.

## POLICY CONSIDERATIONS

As the *Bivens* cause of action is judicially created, the courts naturally have responsibility to outline its parameters. There are strong policy considerations which argue in favor of judicial immunity from equitable relief in this context. Besides creating confusion and a multiplicity of litigation,[6] providing an extra collateral attack on a federal judge's judicial acts would create an untenable situation whereby the orders, judgments, and determinations of a federal district judge, an appellate judge, and even a Supreme Court justice would be subject to review by and injunctive relief from federal district judges.[7] Such a rule would in effect allow both "horizontal appeals" and even "reverse review" of federal court decisions. *Mullis,* at 1392–93. Additionally, if a litigant did not agree with the determination of the federal district court which heard his *Bivens* action, he could simply file another *Bivens* action against that judge alleging violations of his federal civil rights, and so on ad infinitum.[8] *Mullis,* at 1393, n. 20. At common law, one of the rationales for establishing judicial immunity was the strong interest in protecting the finality of judgments from continual collateral attack.

*Pulliam v. Allen,* 466 U.S. at 546–47, 104 S.Ct. at 1983–84 (Justice Powell dissenting). A rule limiting absolute judicial immunity to allow injunctive and declaratory relief against federal court judges threatens to seriously undermine the finality of all federal court judgments.

In conclusion, the Court determines that the decision of the U.S. Supreme Court in *Pulliam* to allow injunctive and declaratory relief against judges in a § 1983 action is not controlling in the context of a *Bivens* action. Instead, the Court determines that an analysis of the common law supports a theory of judicial immunity which bars injunctive and declaratory relief issued by one federal court against the judge of an equal or superior federal court. This theory of judicial immunity is also supported by the clear intent of Congress to provide specific limited avenues of appeal and relief by extraordinary writ from federal court decisions. Finally, this theory of judicial immunity is supported by strong policy considerations in favor of judicial economy and protection of the finality of judgments.

Accordingly, the Court determines that in the context of a *Bivens* action, judicial immunity bars both declaratory and equitable relief. Thus, the plaintiff's action against all defendants is barred by judicial immunity and should be dismissed.

Based on the foregoing, the Court ORDERS that the defendants' motion to dismiss is hereby GRANTED and the plaintiff's action is DISMISSED. The Court further ORDERS that the costs of court are to be assessed against the party incurring same.

---

**6.** *Mullis,* at 1394.

**7.** As the plaintiff's Petition for Writ of Certiorari from the Fifth Circuit's dismissal of the plaintiff's appeal was denied by the Supreme Court, it is unclear why the plaintiff failed to also join the Justices of the United States Supreme Court as defendants in this action.

**8.** There would, in theory, be no end to the vexatious litigation which individual judges would be required to participate in as litigants.