Frizzel STEPHENS, Plaintiff,

v.

Robert HERRING, Assistant Attorney General, Raymond M. Muncy, Patricia A. Johnson, Lou Ann White, Virginia Department of Corrections, M.J. Wilkerson, Virginia Department of Corrections, James A. Smith, Virginia Department of Corrections, Russell Wilson, and Fidelity Deposit of Maryland, Defendants.

Civ. A. No. 2:92cv143.

United States District Court, E.D. Virginia, Norfolk Division.

July 2, 1993.

Frizzel Stephens, pro se.

Karen Lynn Lebo, Office of the Atty. Gen., Richmond, VA, for defendants.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Frizzel Stephens, a former Virginia inmate proceeding *pro se* and *in forma pauperis,* initiated this action under 42 U.S.C. § 1983 alleging that defendants conspired to violate his constitutional rights and seeking monetary relief. The conspiracy claim grows out of this court's decision in a previous action filed by plaintiff in which he claimed that Virginia's parole eligibility statute, Va.Code Ann. § 53.1–151, was unconstitutional as applied to him. By opinion and order issued by the Honorable Robert G. Doumar on December 10, 1990, this court rejected plaintiff's claim and granted summary judgment for the defendants in that action. *See Stephens v. Muncy,* 751 F.Supp. 1214 (E.D.Va.1990). The United States Court of Appeals for the Fourth Circuit affirmed that decision by unpublished opinion. *See Stephens v. Muncy,* 929 F.2d 694 (4th Cir.1991). Judge Doumar also denied plaintiff's subsequent motion under Fed.R.Civ.P. 60(b) for relief from judgment. The Court of Appeals affirmed that decision by unpublished opinion as well. *See Stephens v. Muncy,* 972 F.2d 342 (4th Cir.

1992). It is undisputed that, in ruling on those matters, Judge Doumar acted in his capacity as a judge of this court and within the scope of his jurisdiction.

In the present case, which was assigned initially to Judge Doumar, plaintiff alleges that defendants somehow conspired to violate his constitutional rights in the previous action. On March 8, 1993, plaintiff filed a motion for leave to amend his complaint in this action to add Judge Doumar as an additional defendant and to seek unspecified declaratory and injunctive relief against him. In the motion to amend, Stephens essentially claimed that, by denying his earlier challenge to Virginia's parole eligibility statute and by holding that statute applicable to him, Judge Doumar was in league with the defendants in conspiring to violate Stephens' asserted rights. Stephens further contended that, because he sought only declaratory and injunctive relief against Judge Doumar, the claim was not barred by the doctrine of judicial immunity. *See Fowler v. Alexander,* 478 F.2d 694, 696 (4th Cir.1973). Finally, Stephens requested Judge Doumar to recuse himself, *see* 28 U.S.C. § 455, and also to reconsider an earlier decision in this action denying a request for appointment of counsel.

By order dated May 21, 1993, Judge Doumar denied the motion for reconsideration, but, because no responsive pleadings had yet been served, granted Stephens' motion to amend the complaint to add him as a defendant. *See* Fed.R.Civ.P. 15(a). Because of the pending recusal motion, Judge Doumar further "ordered that this matter be referred to another United States District Judge for the initial purpose of determining whether plaintiff has an action against the undersigned." Stephens was directed to submit affidavits or legal memoranda supporting the claim he intended to pursue against Judge Doumar. In response, Stephens submitted a document entitled "Objections and Response to Order" which does not address the conspiracy claim, but merely objects to certain alleged misstatements in the court's May 21 order and again requests that Judge Doumar recuse himself.

It is against this background that the court addresses whether Stephens can maintain an action for injunctive and declaratory relief against Judge Doumar based on the Judge's allegedly conspiratorial conduct in ruling on legal issues presented in the prior action in this court. Put differently, the fundamental issue presented in this case is whether the doctrine of judicial immunity bars an action against a federal judge seeking injunctive or declaratory relief for allegedly improper conduct undertaken by the judge while performing a judicial act within the judge's jurisdiction.

For the reasons set forth below, the court dismisses plaintiff's complaint under Fed. R.Civ.P. 12(b)(6).

### DISCUSSION

It has long been established that judges, whether federal or state, enjoy absolute immunity from civil actions for damages challenging their judicial acts, " 'even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.' " *Stump v. Sparkman,* 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872)); *see also Clay v. Yates,* 809 F.Supp. 417, 422–23 (E.D.Va. 1992). In particular, the Supreme Court of the United States has expressly recognized that judicial immunity precludes actions for civil damages against state judges under 42 U.S.C. § 1983. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

However, in *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), the Supreme Court held in a 5–4 decision that judicial immunity did not extend to actions under 42 U.S.C. § 1983 seeking prospective injunctive relief against state judges on account of their judicial acts. Unlike *Pulliam,* the present action involves a claim asserted against a federal judge acting under color of federal law, and is therefore properly brought, if at all, under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), not § 1983. Neither the Supreme Court nor our Court of Appeals has considered whether injunctive or declaratory

relief is available in a *Bivens* action against a federal judge for alleged constitutional torts committed during the exercise of his or her judicial functions. Although the Supreme Court has observed generally that, for purposes of immunity, there is no difference between actions brought under § 1983 and *Bivens*, those observations were made not in the context of judicial immunity, but in cases involving, for example, immunity for court reporters, *Antoine v. Byers & Anderson, Inc.*, —— U.S. ——, —— n. 5, 113 S.Ct. 2167, 2170 n. 5, 124 L.Ed.2d 391 (1993), or federal executive officers, *Butz v. Economou*, 438 U.S. 478, 503–04, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978), and are not controlling here.

Nevertheless, because the Supreme Court has frequently relied on its § 1983 jurisprudence to set the parameters of *Bivens* claims, see *Economou*, 438 U.S. at 496–97, 98 S.Ct. at 2905–06, this court must determine whether the Supreme Court's reasoning in *Pulliam* applies with equal force to permit claims for equitable relief against federal judges under *Bivens*. In this regard, at least three federal courts have held that it does not, finding instead that federal judges enjoy the same immunity from equitable remedies as they do from damages. See *Mullis v. United States Bankruptcy Court for the Eastern Dist. of Nev.*, 828 F.2d 1385 (9th Cir.1987), *cert. denied*, 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1981); *Wightman v. Jones*, 809 F.Supp. 474 (N.D.Tex.1992); *Page v. Grady*, 788 F.Supp. 1207 (N.D.Ga.1992). *But see Scruggs v. Moellering*, 870 F.2d 376, 378 (7th Cir.) (dictum criticizing *Mullis* ), *cert. denied*, 493 U.S. 956, 110 S.Ct. 371, 107 L.Ed.2d 357 (1989); *Affeldt v. Carr*, 628 F.Supp. 1097 (N.D.Ohio 1985); *but cf. Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir.1987) (assuming, without analysis, that claims for injunctive relief could be asserted against a federal probation officer, but finding that no injunctive relief was warranted). As discussed below, in the context of our federal system, while *Pulliam*'s rationale may permit a federal court to enjoin the unconstitutional conduct of a state court judge, it does not, for reasons of policy and jurisdictional power, permit a federal court to enjoin the conduct of a member of a co-equal or superior federal tribunal.

In *Pulliam*, the majority based its decision not to extend to state court judges judicial immunity from prospective injunctive relief under § 1983 on two factors. First, the Court determined that the common law, from which we derive our concept of judicial immunity, permitted injunctive-type writs against inferior or rival courts and hence did not preclude equitable relief against state judges who were, as a matter of federal law, subject to the authority of the federal courts on issues governed by federal constitutional or statutory law. 466 U.S. at 529–40, 104 S.Ct. at 1974–80. Second, the Court determined that, in enacting § 1983, Congress intended to allow injunctive relief against state judges in order to effectuate the fundamental purpose for which § 1983 was enacted. *Id.* at 540–41, 104 S.Ct. at 1980–81. Because these factors are significant in assessing whether the decision in *Pulliam* controls the issue presented here, they are considered in detail below.

With regard to the effect of the common law, the Supreme Court first observed that "there was no such thing [at common law] as an injunction against a judge." *Id.* at 529, 104 S.Ct. at 1974. The Court nevertheless drew an analogy between equitable relief against state judges in § 1983 actions and "the collateral prospective relief available against judges through the use of the King's prerogative writs," particularly "the writs of prohibition and mandamus." *Id.* at 529, 532, 104 S.Ct. at 1974, 1976. As the Court explained, the judges of the King's Bench, who exercised the authority of the crown, issued the writs against inferior and rival courts (particularly the rival ecclesiastical courts), not only to control their jurisdiction, but also to enjoin a variety of substantive and procedural errors. *Id.* at 532–34, 104 S.Ct. at 1975–77. Indeed, the writ of prohibition was available against inferior or non-common law courts regardless of whether the error could be corrected on appeal. *Id.* at 534, 104 S.Ct. at 1977.

Because the judges of the King's Bench exercised the authority of the crown, they occupied a special position in the common

law system. They alone exercised the power to issue the King's prerogative writs, *see* 3 W. Blackstone, *Commentaries* *110–*113, and were not, therefore, susceptible themselves to these writs. *Pulliam*, 466 U.S. at 536 & n. 14, 104 S.Ct. at 1978 & n. 14. As Lord Coke explained, judges of the King's Bench were accountable "to God and the King," not to each other. *See* Jay M. Feinman and Roy S. Cohen, *Suing Judges: History and Theory*, 31 S.C.L.Rev. 201, 209 (1980); 6 W. Holdsworth, *A History of the English Law* 239 (1927). Apart from the obvious practical benefits of not issuing writs to fellow members of the King's Bench, it is doubtful that its judges had the power to issue them, as doing so would have been tantamount to issuing a writ against the King himself.

That the judges of the King's Bench were immune from prerogative writs is perhaps also explained by the fact that these writs were issued only to inferior or subordinate tribunals, not to courts of equal authority. *See* 3 W. Blackstone, *Commentaries* *109–12. In this regard, although the ecclesiastical courts were "rivals" to the King's Bench, they were not its equal, and were therefore subject, for example, to writs of prohibition. *See* 1 *Halisbury's Law of England* ¶ 710 (4th ed. 1975). Indeed, after other courts, such as the court of chancery, court of common pleas, and court of the exchequer acquired the power to issue writs of prohibition under certain circumstances, the writs were issued by those courts to enjoin proceedings only in inferior tribunals. *Pulliam*, 466 U.S. at 536 n. 14, 104 S.Ct. at 1978 n. 14 (citing 3 W. Blackstone, *Commentaries* *112).

In light of this history, the Supreme Court concluded in *Pulliam:*

> The relationship between the King's Bench and its collateral and inferior courts is not precisely paralleled in our system by the relationship between the state and federal courts. To the extent that we rely on the common-law practice in shaping our own doctrine of judicial immunity, however, the control exercised by the King's Bench through the prerogative writs is highly relevant. It indicates that, at least in the view of the common law, there was no inconsistency between a principle of immunity that protected judicial authority from "a wide, wasting, and harassing persecution," and the availability of collateral injunctive relief in exceptional cases.

*Pulliam*, 466 U.S. at 535–36, 104 S.Ct. at 1977–78 (internal citation omitted). The Court further reasoned that, although there was some risk that judges would be harassed by suits for injunctive relief, the risk of such harassment was minimized by the need for plaintiffs to satisfy the traditional requirements for obtaining injunctive relief, namely, "a showing of an inadequate remedy at law and of a serious risk of irreparable harm." *Id.* at 537, 104 S.Ct. at 1978. The Court observed that similar limitations obtained in issuing writs of mandamus, which could be issued by "the supervising court," in "extraordinary" circumstances. *Id.* at 538, 104 S.Ct. at 1979. The Court also noted that the principles of comity and federalism acted as a further brake on the issuance of injunctions against state court judges under § 1983.

In addition to the common law, the Court found in the legislative history of § 1983 support for its conclusion that the doctrine of judicial immunity did not protect state judges from federal injunctive relief under § 1983. Examining this legislative history, the Court discerned no indication "that Congress intended to insulate [state] judges from prospective collateral relief." *Id.* at 540, 104 S.Ct. at 1980. Indeed, the Court concluded that Congress enacted § 1983 "to provide an independent avenue for protection of federal constitutional rights" against infringement by all state officials, including judges. *Id.; see also id.* at 541, 104 S.Ct. at 1980 (noting that the "very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'") (citation omitted). In light of this clear congressional mandate, the Court declined to extend the doctrine of judicial immunity to exempt state judges from federal oversight, in the form of injunctive and declaratory relief, under § 1983.

Against this background, it is necessary now to consider whether the factors that determined the result in *Pulliam* require the same result where, as here, injunctive and declaratory relief is requested against a co-equal federal court under circumstances not involving federal supervisory authority over action taken under the color of state law.

■ Considering first the relevant common law history, it appears that the analogy drawn in *Pulliam* between the prerogative writs issued by the King's Bench to inferior and rival courts and the injunctions issued by federal courts to state judges under § 1983, while perhaps imperfect in the § 1983 context, does not apply in the context of a *Bivens* claim. This is so because in a *Bivens* claim any injunctive relief would be directed by one federal court to another court in the federal system and would not be related to the proper functioning of federal-state relations. In this regard, although the state courts in our federal system are not "inferior" to the federal courts, the decisions of state courts are subject to federal review in matters involving federally protected rights, *see, e.g.,* 28 U.S.C. § 2254; Sup.Ct. 10(b), and, under limited circumstances, are also subject to federal court injunctions. *See, e.g.,* 28 U.S.C. § 2283; *Henry v. First Nat'l Bank of Clarksdale,* 595 F.2d 291, 300 (5th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); 1A *Moore's Federal Practice,* para. 0.208[3–1], p. 2314 (2d ed. 1993).

■ No common law tradition or precedent sanctions the use of injunctive relief against courts of equal stature in the same court system. *See, e.g., Jones,* 809 F.Supp. at 477–78 & n. 3. And, like the prerogative writs at common law, the extraordinary writs of prohibition and mandamus available under the All Writs Statute, 28 U.S.C. § 1651, may not be directed to a co-equal court. *See Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943) (mandamus); *Ex Parte Chicago, R.I. & Pac. Ry.,* 255 U.S. 273, 275, 41 S.Ct. 288, 289, 65 L.Ed. 631 (1921) (prohibition); *Mullis,* 828 F.2d at 1393 (observing that "a district court lacks authority to issue a writ of mandamus to another district court."); *see generally* 9

*Moore's Federal Practice* ¶ 110.26 (2d ed. 1993).

■ Moreover, unlike § 1983 claims, which were created by Congress for the very purpose of permitting federal oversight of the conduct of state officials, including judges, to enforce federal constitutional rights, *Bivens* claims against federal officials are judicially created. *E.g., Jones,* 809 F.Supp. at 478; *Page,* 788 F.Supp. at 1211. Consequently, there is no corresponding congressional intent or authorization to permit under *Bivens* equitable relief against a federal judge. In this regard, the court notes that *Bivens* itself was concerned only with money damages, not injunctive relief. *See Mullis,* 828 F.2d at 1394 n. 21 (discussing *Bivens* ).

Furthermore, the concern expressed in *Pulliam* that extending judicial immunity to state judges "would foreclose relief in situations where, in the opinion of a federal judge," such relief is necessary to prevent irreparable harm, has little, if any, application in the context of a *Bivens* action. As explained by the United States Court of Appeals for the Ninth Circuit in *Mullis:*

> Congress has provided carefully structured procedures for taking appeals, including interlocutory appeals, and for petitioning for extraordinary writs in Title 28 of the United States Code. Through these procedures, a litigant ... receives full federal court review of allegations of deprivations of federal constitutional rights by federal judicial officers acting under color of federal law. To allow an action for declaratory and injunctive relief against federal officials who would be entitled to judicial immunity from damages merely engenders unnecessary confusion and a multiplicity of litigation.

828 F.2d at 1394; *see also Jones,* 809 F.Supp. at 478–79. Indeed, allowing *Bivens* actions for injunctive or declaratory relief against federal judges for alleged unconstitutional conduct in performing judicial acts would, in theory, permit such relief to issue not only against district judges, but also against judges of superior federal tribunals. *See id.* at 479; *Page,* 788 F.Supp. at 1212. *Pulliam* simply cannot be interpreted to permit such

an untenable system of "horizontal appeals" and "reverse review" of federal court judgments. *Mullis*, 828 F.2d at 1392–93; *Jones*, 809 F.Supp. at 479. Moreover, allowing such injunctive relief could seriously undermine the finality of federal judgments by permitting, in addition to the usual appeals and collateral attacks, an additional layer of successive *Bivens* petitions. *Jones*, 809 F.Supp. at 479.

Thus, considering the absence of either common law tradition or congressional mandate to permit injunctive and declaratory relief against federal judges of equal tribunals for acts within their jurisdiction, and the potential disruption to the system of federal appellate and collateral review of recognizing such a right, the court concludes that federal judges enjoy absolute immunity from *Bivens* actions seeking declaratory and injunctive relief. Because Judge Doumar is entitled to judicial immunity, the amended complaint fails to state, as to him, a claim upon which relief can be granted. *See King v. Myers*, 973 F.2d 354 (4th Cir.1992).

Moreover, even assuming that federal judges were not so immune, Stephens has not alleged sufficient facts to state a viable conspiracy claim against Judge Doumar. It is well-settled that, in considering the sufficiency of a complaint, the court must consider whether plaintiff's factual allegations, taken as true and viewed in the light most favorable to the plaintiff, "constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992).

The court is not required, however, to accord a presumption of truthfulness to conclusory allegations or deductions drawn from pleaded facts. *E.g., Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir.1978); *Albany Welfare Rights Org. Day Care Center, Inc. v. Schreck*, 463 F.2d 620, 623 (2d Cir.1972), *cert. denied*, 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973); *see also* 2A *Moore's Federal Practice* ¶ 12.07[2.-5], pp. 12–65, 12–66 (2d ed. 1993). In particular, although *pro se* complaints are to be liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), "'even a *pro se* litigant is required to allege something in the way of facts before his allegations of conspiracy may be deemed to state a claim.... mere conjecture that there has been a conspiracy is not enough.'" *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983).

Under the applicable legal standard, the court concludes that Stephens' conspiracy allegations in the present complaint fail as a matter of law. The essence of the claim against Judge Doumar is that he and the defendants had a "meeting of the mind" to violate Stephens' constitutional rights because Judge Doumar rejected Stephens' constitutional challenge to the application of Virginia's parole eligibility statute. This decision was affirmed on appeal. Nevertheless, in his motion to amend his complaint, Stephens states that he "can only *assume* from ... [Judge Doumar's] actions [in rejecting his constitutional challenge] that he is in league with the Asst. Atty. General and the defendants to help them avoid liability." (emphasis added).[1]

Plaintiff's speculative allegation of conspiracy, even viewed in his favor, is wholly inadequate to state a claim against Judge Doumar. The nature of the judicial function in our adversarial system is to weigh competing arguments in light of the relevant facts and applicable law and, though often difficult, to

1. Although in its May 21 order the court invited Stephens to elaborate on these claims by affidavit or legal memorandum, he failed to do so. The court's May 21 order advising Stephens that the matter would be referred to another judge to determine whether he stated a claim against Judge Doumar and that he was entitled to submit affidavits and legal arguments to substantiate his claim, satisfies the requirement that Stephens be given notice and an opportunity to be heard before dismissing his complaint *sua sponte*. *See*

*Saifullah v. Johnson*, 948 F.2d 1282 (4th Cir. 1991) (table; text in WESTLAW). While Stephens' response to that order does not address his conspiracy claim against Judge Doumar, it does argue that, because Judge Doumar was named as a defendant in the action, the Judge was without authority to enter the May 21 order. This issue may be presented to Judge Doumar for reconsideration or to the Court of Appeals, but it is axiomatic that this court is without authority to review the decisions of one of its members.

decide which side wins and which side loses. The fact that a judge accepts one party's arguments and rejects another's cannot, without more, give rise to an inference that the judge conspired with the prevailing party. Were it otherwise, courts would be flooded with conspiracy claims against judges by disgruntled litigants. Such collateral attacks not only would subject judges to vexatious litigation, but also would subvert established procedures for appellate review.

## CONCLUSION

Based on the foregoing, the court holds that Judge Doumar is entitled to absolute judicial immunity from plaintiff's claim for declaratory and injunctive relief and that, even if immunity did not preclude this action, the complaint is otherwise legally insufficient. Accordingly, plaintiff's complaint against Judge Doumar is dismissed under Fed. R.Civ.P. 12(b)(6). The matter is therefore returned to Judge Doumar to rule on the motion for recusal and, if that motion is denied, on the remaining issues in this action.

It is so ORDERED.