Larry BOLIN, Kenneth David Pealock, et al., Plaintiffs-Appellants,

v.

Richard W. STORY, et al., Defendants-Appellees.

No. 99-13880

Non-Argument Calendar.

United States Court of Appeals,

Eleventh Circuit.

Sept. 6, 2000.

Appeal from the United States District Court for the Northern District of Georgia.(No. 99-00024-CV-RLV-2), Robert L. Vining, Jr., Judge.

Before TJOFLAT, HULL and RONEY, Circuit Judges.

PER CURIAM:

After being convicted of certain criminal offenses, plaintiffs brought this civil rights action seeking injunctive and declaratory relief against numerous judges and prosecutors, as well as an Internal Revenue Service ("IRS") agent. Plaintiffs appeal the district court's denial of plaintiffs' recusal motions and the Rule 12(b)(6) dismissal of their action based upon absolute immunity. Upon review, we affirm.

I. BACKGROUND

*A.    Criminal Prosecution of Plaintiff Thompson*

In 1995, Plaintiff Lloyd Thompson was convicted of a drug conspiracy in violation of 21 U.S.C. § 846. Thompson's conviction and sentence were affirmed by this Court in an unpublished opinion on July 15, 1996. Thompson subsequently filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. *See United States v. Thompson,* Civil Action No. 1:97-cv-1815-WCO. Magistrate Judge John R. Strother issued a report and recommendation in which he recommended that the motion to vacate be denied. United States District Judge William C. O'Kelley adopted the report and recommendation and subsequently declined to issue a certificate of appealability. Thompson alleges that he appealed this ruling, but no ruling has been made by this Court.

In addition, Thompson asserts that "in the course of reviewing his paperwork, [he] found the following entry on his master docket sheet":

11/6/97     72 ORDER by Mag Judge John R. Strother Jr. as to defendant Lloyd Barry Thompson directing clerk to shred sealed material. (yrm) [Entry date 11/20/97]

Finally, Thompson asserts that "[i]t was patently obvious from the ruling of defendant district judge William C. O'Kelly [sic] that he *had not read* any of plaintiff Lloyd Barry Thompson's § 2255 petition" and that "predictably" his arguments will not be read by Article III judges in this Court either.

B.      *Criminal Prosecution of Plaintiffs Pealock and Bolin*

In 1997, plaintiffs Kenneth Pealock and Larry Bolin, among others, were indicted for conspiracy to defraud the United States. *See United States v. Pealock,* 2:97-cr-29-RWS. Pealock and Bolin were tried before United States District Judge Richard W. Story, and found guilty on March 15, 1999. Pealock was sentenced to a term of imprisonment, and Bolin had yet to be sentenced as of the time of the district court's ruling in this case.[1] Defendant Assistant United States Attorney David M. Leta handled the case for the government.

Pealock and Bolin allege that the only reason charges were brought against Pealock was so that Leta could "score 'career points' by obtaining a $3,000,000.00 forfeiture of plaintiff Kenneth Pealock's property." Further, Pealock and Bolin allege that "either defendant district judge Richard W. Story is being completely dishonest in his rulings or *someone else* (i.e., the prosecutor) is writing his opinions for him."[2]

C.      *The Civil Complaint*

Plaintiffs brought this action for declaratory and injunctive relief against Judges O'Kelley and Story, Magistrate Judge Strother, most of the active and senior judges of this Court,[3] Assistant United States

---

[1]Court records indicate that Bolin was sentenced to a forty-eight month term of imprisonment on November 24, 1999.

[2]Plaintiffs also attach a "Summary of Events" to their complaint describing what they allege to be specific incidents of misconduct during the criminal prosecution of Pealock and Bolin.

[3]There is only one judge on this Court, Judge Charles R. Wilson, who is not a named defendant in this case as he was sworn in as a member of this Court after the filing of plaintiffs' complaint.

Attorney Leta, the United States Attorney for the Northern District of Georgia, Richard Deane, Ted Robertson, an IRS agent who was allegedly involved in Pealock and Bolin's federal criminal trial, and unnamed law clerks and staff attorneys for this Court. Plaintiffs state that "[t]he gravamen of plaintiffs' Complaint is that the defendant federal judges do not READ anything submitted by pro se litigants, thereby defrauding them of the judgments that are rightfully theirs." In addition, "[t]his case also addresses perjury by a government witness before a grand jury, capricious prosecution, denial of the right to have a disinterested prosecutor, withholding of *Brady* material, and judicial dishonesty."

The complaint asserts that both this Court and the "Northern District of Georgia" treat pro se litigants differently than licensed attorneys in that magistrate judges in the district court make reports and recommendations which are then adopted by district judges who have not read the pro se pleadings. Further, the complaint alleges that "[i]t has been clearly established that appellate court judges in the Eleventh Circuit routinely *do not read* pro se briefs, but allow *staff attorneys* to make 'summaries' for them instead." The plaintiffs base this assertion on the testimony of both former Chief Judges Joseph Hatchett and Gerald Tjoflat at a March 28, 1998 public hearing of the Commission on Structural Alternatives for the Federal Courts of Appeals in Atlanta, Georgia.

Plaintiffs' complaint appears to allege that the failure of the defendant judges to read pro se pleadings violates their right to equal protection, denies them access to the courts, and amounts to obstruction of justice. In addition, the complaint appears to allege that this practice constitutes a fraud on the court and permitted Leta to present false testimony in the prosecution of Pealock and Bolin, thus perpetuating the fraud on the court. Finally, the complaint alleges that the defendant judges, court personnel, and U.S. Attorneys comprise an enterprise which persists in a pattern of racketeering activity to obstruct justice.

Plaintiffs' complaint seeks declarations that (1) pro se litigants "are entitled to the same consideration in adjudication of their actions as any lawyer from any 'blue chip' law firm," (2) "the practice of allowing staff attorneys to make presentations to appellate panels too involved in other things" is unconstitutional, (3) "the practice of issuing an Opinion without first *reading* the pleadings of a pro se litigant" is unconstitutional, and

(4) Defendant Judges Story and Strother are "mentally incompetent by reason of bias." Plaintiffs also seek to enjoin defendants to provide (1) a report by this Court to Congress, (2) "extensive discovery ... in order to uncover and document the fraud in the judgments rendered against them and the pathological bias of defendant federal district court judge Richard W. Story, defendant senior district court judge William C. O'Kelly [sic], and federal magistrate judge John R. Strother, Jr.," and (3) an investigation by a grand jury into the "criminal depredations of the defendants." Further, plaintiff Thompson seeks to void the judgment in *Thompson v. United States,* Case No. 1:97-cv-1814-WCO.

D.      *Proceedings in the District Court*

This action was before the Honorable Robert L. Vining, Jr., United States District Judge for the Northern District of Georgia. The defendant Judges and U.S. Attorneys filed a motion to dismiss plaintiffs' action on the basis of sovereign immunity on April 22, 1999. An additional motion to dismiss was filed by Defendant Ted Robertson on August 31, 1999. Prior to the district court's ruling on these motions, plaintiffs filed a motion for the recusal of Judge Vining on March 25, 1999. The district court denied that recusal motion on May 3, 1999. The plaintiffs filed another motion to recuse on June 17, 1999.

In an order dated September 27, 1999, the district court denied plaintiffs' second motion for recusal and granted defendants' motions to dismiss plaintiffs' complaint. Specifically, the district court dismissed plaintiffs' claims against the defendant Judges and U.S. Attorneys on the basis of absolute immunity and the claims against I.R.S. agent Robertson for failure to state a claim.[4] Plaintiffs appeal the district court's orders denying recusal and dismissing this action.

II. DISCUSSION

Plaintiffs raise several issues on appeal. Because plaintiffs have named most of the active and senior judges of this Court as defendants, however, we must first address our ability to decide this appeal before

---

[4]In response to the defendants' motions to dismiss, plaintiffs clarified that their claims were against defendants in their individual capacity. As a result, the district court found that sovereign immunity was not at issue. Similarly, plaintiffs only assert claims against defendants in their individual capacity on appeal, and thus no issue of sovereign immunity is presented to this Court either.

reaching the merits of these issues.

*A.     Recusal by this Court*

In ordinary circumstances, each of us would be disqualified from hearing this appeal by virtue of being named as defendants. *See* 28 U.S.C. § 455(b)(5)(i) (providing that a federal judge "shall ... disqualify himself [when] [h]e ... is a party to the proceeding"). There is an exception to this rule, however, in cases where "the case cannot be heard otherwise." *United States v. Will,* 449 U.S. 200, 213, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). Under this "rule of necessity," a judge is not disqualified due to a personal interest if there is no other judge available to hear the case. *See id.; Atkins v. United States,* 214 Ct.Cl. 186, 556 F.2d 1028, 1036 (Ct.Cl.1977).

The rule of necessity is generally invoked in cases in which no judge in the country is capable of hearing the case. *See In re Petition to Inspect and Copy Grand Jury Materials,* 735 F.2d 1261, 1266-67 (11th Cir.1984). At least two courts have found, however, that where a plaintiff indiscriminately sues all of the judges in a circuit, the fact that it is possible to convene a panel of disinterested judges outside the circuit does not require transfer of the case or preclude the application of the rule of necessity. *See Switzer v. Berry,* 198 F.3d 1255 (10th Cir.2000); *Tapia-Ortiz v. Winter et al.,* 185 F.3d 8 (2d Cir.1999). Specifically, in *Tapia-Ortiz,* a pro se prisoner brought a RICO action against the judges of the Second Circuit Court of Appeals and its staff attorneys claiming that they had failed, and would fail, to address properly the issues raised in cases on appeal. The Second Circuit found that the fact that "it is possible to convene a disinterested panel in another circuit does not require transfer here, where appellant has indiscriminately named all then-current Second Circuit judges as defendants, even those who had no role in deciding either of his appeals." *Tapia-Ortiz,* 185 F.3d at 10.

Similarly, in *Switzer v. Berry,* 198 F.3d 1255 (10th Cir.2000), the court determined that it did not have to recuse in the appeal of the denial of a § 2254 habeas petition. The petitioner in that case previously filed a pro se RICO action against all of the active and senior judges of the Tenth Circuit Court of Appeals, two district court judges of the Federal District Court for the District of Colorado, a magistrate judge, the U.S.

Attorney for Colorado, the Clerk of the Tenth Circuit, and the Tenth Circuit's Chief Staff Counsel. In the RICO action, the petitioner alleged that the defendants conspired to obstruct justice in that no Article III judge read the filings in his prior § 1983 and habeas cases, nor did they read the orders and judgments issued in his § 1983 case, as the rulings on pro se filings are routinely authored by law clerks and staff attorneys and signed by judges without review. The Tenth Circuit followed the Second Circuit's reasoning in concluding that "under our duty to sit and the rule of necessity, a lawsuit brought indiscriminately against all the active and senior judges on the Tenth Circuit Court of Appeals does not operate automatically to render the court unable to hear and decide an appeal brought by the plaintiff/petitioner." *Id.* at 1258. In addition, the Tenth Circuit applied this holding "both to appeals in which the judges are named and to associated or subsequent appeals in which the plaintiff/petitioner is a party but the judges are not named." *Id.*

We are faced with a similar situation in this case. Because only one judge currently serving on this Court was not named as a party, it is impossible to convene a three-judge panel in which none of the judges have a personal interest in this case. Further, plaintiffs have indiscriminately named all, except one, of the current judges of this circuit regardless of their involvement in any of their appeals. Given the similarity of the situation, and the persuasive nature of the Second and Tenth Circuits' reasoning, we follow both *Tapia-Ortiz* and *Switzer* in concluding that the rule of necessity allows at least those judges on this Court who have not been involved in plaintiffs' prior appeals to hear this appeal. We therefore turn to the merits of the issues raised by plaintiffs.

B.      *Recusal by the District Court*

Before reaching the merits of the district court's dismissal of plaintiffs' action, we review the district court's denial of plaintiffs' motions for recusal by that court. Pursuant to 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The standard under § 455 is objective and requires the court to ask "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *McWhorter v. City of Birmingham,* 906 F.2d 674, 678 (11th Cir.1990)

(citation omitted). Under 28 U.S.C. § 455, it is well settled that the allegation of bias must show that "the bias is personal as distinguished from judicial in nature." *United States v. Phillips,* 664 F.2d 971, 1002 (5th Cir. Unit B 1981), *superseded on other grounds, United States v. Huntress,* 956 F.2d 1309 (5th Cir.1992);[5] *Phillips v. Joint Legislative Comm., etc .,* 637 F.2d 1014, 1019-20 (5th Cir.1981). As a result, except where pervasive bias is shown, a judge's rulings in the same or a related case are not a sufficient basis for recusal. *See Phillips,* 664 F.2d at 1002-03.

Plaintiffs' motions offer no factual evidence of the type of personal bias that would sustain a doubt about Judge Vining's impartiality and require recusal in this case. Plaintiffs base their motions upon the fact that Judge Vining has sat by designation on the Eleventh Circuit Court of Appeals in the past, has a long term working relationship with a large majority of the defendants, and oversaw a grand jury investigation of one of the plaintiffs. We conclude that these allegations are not sufficient to cause an objective, disinterested, lay observer to entertain a significant doubt about Judge Vining's impartiality. Accordingly, we affirm the district court's denial of Plaintiffs' motions for recusal.

C.      *Absolute Judicial Immunity*

Plaintiffs also challenge the district court's grant of absolute immunity from plaintiffs' claims of injunctive relief to the defendant judges. Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the " 'clear absence of all jurisdiction.' " *Stump v. Sparkman,* 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Simmons v. Conger,* 86 F.3d 1080, 1084-85 (11th Cir.1996). This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction. *See Stump,* 435 U.S. at 356, 98 S.Ct. 1099.

In *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), however, a divided Supreme Court held that judicial immunity did not protect a state judge from claims for injunctive relief in a § 1983 action. In making this determination, the Court concluded that, consistent with the development of

[5]In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), the Eleventh Circuit adopted decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981, as binding precedent.

immunity in English common law, American courts had never adopted a rule of absolute judicial immunity to claims for injunctive relief. *Id.* at 536, 104 S.Ct. 1970. In addition, the Court noted that, as of the time of its opinion, seven Circuits had indicated that there was no immunity from prospective injunctive relief and that the limitations already imposed by the requirements for obtaining injunctive relief "severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants." *Id.* at 537-38, 104 S.Ct. 1970. Finally, the Court addressed the concern that allowing federal judges to grant injunctive relief against state judges under § 1983 would be inconsistent with the doctrines of comity and federalism. In this regard, the Court stated that nothing in § 1983 indicates that Congress intended to insulate state judges completely from federal review of their actions, and, because that statute allowed for suits against state officials and did not limit the relief available against judges, the Court declined to create such a limit. *See id.* at 540-42, 104 S.Ct. 1970.

The dissent in *Pulliam* disagreed with the majority's analysis of English common law, arguing instead that the common-law remedies pointed to by the majority were not analogous to suits for injunctive relief against judges and therefore did not support the majority's position that such relief was available. Further, the dissenting Justices were of the opinion that the prerequisites for injunctive relief did not provide a sufficient protection to judicial independence from the threat of vexatious litigation and pointed to the case before them as an example. As a result, the dissent concluded that there was "no principled reason why judicial immunity should bar suits for damages but not for prospective injunctive relief." *Id.* at 557, 104 S.Ct. 1970.

The precise question of whether this *Pulliam* limit on judicial immunity applies to federal judges as well, when sued pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is one of first impression in our circuit. It has been addressed, however, by several district courts and the Ninth Circuit Court of Appeals. *See Mullis v. United States Bankruptcy Court for the District of Nevada,* 828 F.2d 1385 (9th Cir.1987); *Kampfer v. Scullin,* 989 F.Supp. 194, 201-02 (N.D.N.Y.1997); *Stephens v. Herring,* 827 F.Supp. 359, 361-65 (E.D.Va.1993); *Page*

*v. Grady,* 788 F.Supp. 1207 (N.D.Ga.1992); *Wightman v. Jones,* 809 F.Supp. 474 (N.D.Tex.1992); *Neville v. Dearie,* 745 F.Supp. 99 (N.D.N.Y.1990); *see also Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Most of these courts have held that the doctrine of absolute judicial immunity serves to protect *federal* judges from injunctive relief as well as money damages.

In *Mullis,* the Ninth Circuit pointed out several "anomalies" in the potential application of the *Pulliam* exception to judicial immunity to federal judges. Specifically, the court stated that in cases in which a federal judge meets the preconditions for judicial immunity—that he or she acted in his or her judicial capacity—there will "invariably" be an adequate remedy at law through either ordinary appeals or an extraordinary writ. Further, the court stated that the availability of these alternate remedies would diminish a plaintiff's ability to show a serious risk of irreparable harm as well. *See Mullis,* 828 F.2d at 1392.

The *Mullis* court also noted that to allow injunctive relief against federal judges would be to permit a "horizontal appeal" from one district court to another or even "reverse review" of a ruling of the court of appeals by a district court. *Id.* at 1392-93. The court then went on to conclude that these problems suggested that the *Pulliam* exception should not apply in suits against federal judges. Finally, the *Mullis* court noted that this conclusion was supported by the absence of explicit statutory authority for a suit against a federal judge as was present in the § 1983 action against a state judge at issue in *Pulliam. Id.* at 1393-94.

Similarly, in *Page v. Grady,* 788 F.Supp. 1207 (N.D.Ga.1992), the Northern District of Georgia concluded that the rationale of *Pulliam* does not apply in suits against federal judges. In *Page,* the court noted that suits against state officials are explicitly allowed by § 1983 and that suits for injunctive relief against state judges were necessary to effectuate the historical practice of federal court oversight of state courts. 788 F.Supp. at 1211. Because these policies are not at issue in suits against federal judges, and *Bivens* actions against federal officials are judicially-created remedies anyway, the *Page* court found that it was inappropriate to limit absolute judicial immunity in *Bivens* suits against federal judges. *Id.* at 1211-12. The court also noted that to find otherwise would be to allow a new method of oversight of federal court actions by co-equal or inferior federal courts. *See id.* at 1212; *Stephens,* 827 F.Supp. at 361-65; *Wightman,* 809 F.Supp. at 476-

There is an opposing position that warrants discussion, however. Specifically, the dissent in *Mullis* quotes *Pulliam* 's conclusions that the absence of immunity from prospective relief prior to that time had not chilled judicial independence and that such independence was adequately protected by the requirements for injunctive relief as follows:

> We never have had a rule of absolute judicial immunity from prospective relief, and there is no evidence that the absence of that immunity has had a chilling effect on judicial independence ... The limitations already imposed by the requirements for obtaining equitable relief against any defendant—a showing or an inadequate remedy at law and of a serious risk of irrevocable harm (citations omitted),—severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants.

*Mullis,* 828 F.2d at 1394-95 (O'Scannlain, J. dissenting) (alterations in original); *see Scruggs v. Moellering,* 870 F.2d 376, 378 (7th Cir.1989) (questioning *Mullis* ' need for reliance upon absolute immunity when the court's conclusion that an adequate remedy at law existed led to the same result), *abrogated on other grounds, Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993); *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987) (citing *Pulliam,* without discussion, for the proposition that a federal probation officer's quasi-judicial immunity from damages claims regarding the preparation of a pre-sentence report did not bar similar claims for injunctive relief); *Neville v. Dearie,* 745 F.Supp. 99, 102 (N.D.N.Y.1990) (citing *Dorman* for the proposition that judicial immunity does not bar claims for injunctive relief against federal judges).

In addition, the Supreme Court has previously held that it is inappropriate to create a distinction between state and federal officials for the purposes of immunity as follows:

> There is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by Bivens than is accorded state officials when sued for the identical violation under § 1983. The constitutional injuries made actionable by § 1983 are of no greater magnitude than those for which federal officials may be responsible.

*Butz v. Economou,* 438 U.S. 478, 500, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). We have similarly stated that the immunities provided federal officials in *Bivens* actions are coextensive with those provided state officials from § 1983 actions. *See Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir.1995); *Charles v. Wade,* 665 F.2d

661, 666 (5th Cir. Unit B 1982); *Barker v. Norman,* 651 F.2d 1107, 1122 (5th Cir.1981).[6] Thus, this issue is a closer one than it would seem at first blush. After considering both sides of the issue, however, we find the stronger argument favors the grant of absolute immunity to the defendant federal judges in this case. Thus we affirm the district court's dismissal of the claims against the defendant judges.

Further, even assuming *arguendo* that the *Pulliam* decision applies equally in *Bivens* actions against federal judges, that decision has been partially abrogated by statute. Specifically, in 1996, Congress enacted the Federal Courts Improvement Act ("FCIA"), Pub.L. No. 104-317, 110 Stat. 3847 (1996), in which it amended § 1983 to provide that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." At least two district courts have determined that this amendment also limits any injunctive relief available against federal judges. *See Jones v. Newman,* No. 98 CIV. 7460 (MBM) (S.D.N.Y. June 30, 1999); *Kampfer v. Scullin,* 989 F.Supp. 194 (N.D.N.Y.1997). As the court in *Jones* explained, there are two reasons supporting the applicability of this amendment in *Bivens* actions. First, as a general matter federal courts incorporate § 1983 law into *Bivens* actions. *See Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 433 n. 5, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). In addition, to the extent that federal judicial officers are not immune from suits for injunctive relief, their liability is based on § 1983 law as set out in *Pulliam.* As a result, even assuming *arguendo* that *Pulliam* does apply to federal judges, the 1996 amendment to § 1983 would limit the relief available to plaintiffs to declaratory relief. As discussed below with regard to the defendant prosecutors, plaintiffs are not entitled to declaratory relief as there is an adequate remedy at law. Therefore, for this reason as well, the district court properly dismissed plaintiffs claims against the defendant judges.

D.     *Defendant Prosecutors*

---

[6]None of these cases directly addresses the scope of absolute judicial immunity, however. *Abella* merely contains a general comment on the coextensiveness of remedies and immunities under § 1983 and *Bivens, Charles* discusses witness immunity, and *Barker* involves qualified immunity. Indeed, *Abella* contains a footnote explicitly stating that the court does not address the issue of absolute immunity. *See Abella,* 63 F.3d at 1065-66 n. 3.

Prosecutors are also entitled to absolute immunity from damages for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the government's case. *See Imbler v. Pachtman,* 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir.1999)*; Fullman v. Graddick,* 739 F.2d 553, 558-59 (11th Cir.1984). Our predecessor court has held that prosecutors are not immune from claims for injunctive relief, however. *See Tarter v. Hury,* 646 F.2d 1010, 1012 (5th Cir.1981) ("[P]rosecutors do not enjoy absolute immunity from [declaratory and injunctive relief] claims."). Further, we have found no case distinguishing between state and federal prosecutors in this regard as has been done between state and federal judges. However, we do not resolve this question because the district court's dismissal of plaintiffs claims against the defendant prosecutors may so clearly be upheld on an alternate ground.

In order to receive declaratory or injunctive relief, plaintiffs must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law. *See Newman v. Alabama,* 683 F.2d 1312 (11th Cir.1982). As aptly noted by the Ninth Circuit in *Mullis,* there is an adequate remedy at law for the violations alleged by plaintiffs in their complaint. Specifically, plaintiffs may appeal any rulings, or actions taken, in their criminal cases not only to this Court but also to the Supreme Court. In addition, plaintiffs may seek an extraordinary writ such as a writ of mandamus in either this Court or the Supreme Court. *See* 28 U.S.C. § 1651. Accordingly, there is an adequate remedy at law and plaintiffs are not entitled to declaratory or injunctive relief in this case. As a result, the district court was correct in dismissing plaintiffs' claims, albeit for a different reason.[7]

E.      *Dismissal of Claims Against Defendant Robertson*

Plaintiffs also allege that the district court erred in dismissing their claims against defendant Robertson. The district court dismissed these claims for failure to state a claim based upon the fact that plaintiffs' complaint fails to allege any specific misconduct by Robertson. Plaintiffs assert that there is ample

---

[7]Even were the defendant judges not entitled to absolute immunity, the remaining claims for declaratory relief against them would be properly dismissed for this reason as well.

evidence in the record to prove their allegations of misconduct against Robertson and refer the court to materials filed in the criminal case against plaintiff Pealock. Regardless of whether the district court could have properly taken judicial notice of these materials in ruling upon Robertson's motion to dismiss, we note that the same alternate remedies available to plaintiffs for their claims against the defendant judges and prosecutors are also available for their claims against Robertson. Accordingly, plaintiffs are not entitled to declaratory or injunctive relief against Robertson either and we affirm the district court's dismissal of plaintiffs' claims against him as well.

## III. CONCLUSION

The district court did not err in denying plaintiffs' motions for recusal. We also conclude that the defendant judges are entitled to absolute immunity and plaintiffs cannot show the absence of an adequate remedy at law for their claims and therefore are not entitled to the declaratory or injunctive relief sought in their complaint. As a result, we affirm the district court's dismissal of this action.

AFFIRMED.