[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14305

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JASMIN MARRERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cr-00449-MLB-1

_____

Before NEWSOM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Defendant Jasmin Marrero appeals her 24-month sentence imposed for violating the terms of her supervised release, pursuant to 18 U.S.C. § 3583(e)(3). Marrero does not dispute that she violated multiple terms of her supervised release. Rather, she argues that her sentence is procedurally unreasonable because the district court demonstrated a personal bias against her. After review, we affirm Marrero's revocation sentence.

## I.  BACKGROUND

### A.  Marrero's Conviction and Supervised Release

In 2013, defendant Marrero pled guilty to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). The district court imposed a 78-month sentence, followed by five years of supervised release.

In 2019, defendant Marrero began her supervised release term. While residing at a halfway house, Marrero met Michael Robinson, also on supervised release for federal drug crimes. Marrero and Robinson married and had a child. The same probation officer supervised them.

### B.  2019 and 2020 Domestic Abuse and Recantations

In July 2019 and in February 2020, the police arrested Robinson for domestic battery against Marrero at their home after

she said Robinson attacked her. Twice, the probation officer filed a petition to revoke Robinson's supervised release but then withdrew it because Marrero later changed her story.

### C.  Marrero's First Revocation in 2020

In March 2020, defendant Marrero admitted violating her supervised release by: (1) not complying with her home detention program; (2) failing to maintain the batteries in her GPS tracker; (3) failing to produce a urine sample and tampering with the urine sample; and (4) unlawfully possessing a controlled substance by taking a coworker's Adderall and by testing positive for amphetamines and marijuana. The district court revoked Marrero's supervised release and imposed a 12-month sentence, followed by 36 months of supervised release.

### D.  2022 Domestic Abuse and Recantation

In 2021, defendant Marrero was released from prison and was on supervised release. Later, Marrero's supervision was transferred to the Northern District of Georgia. Ultimately, the same district court judge and prosecutor handled both Marrero's and Robinson's revocation cases.

In January 2022, the police again arrested Robinson for domestic battery after Marrero said he attacked her at their home. The probation officer filed a petition to revoke Robinson's supervised release. Both the probation officer and prosecutor spoke with Marrero, who confirmed she was truthful about Robinson's attack.

The probation officer also obtained the police report, photographs, and body camera footage, which showed that when police arrived, Marrero had bruises on her face and arms and a cut on the side of her face. Later, however, Robinson's defense counsel informed the probation officer that at Robinson's state bond hearing, Marrero recanted and testified that she was the aggressor during the fight.

### E. Robinson's April 14, 2022 Revocation Hearing

The district court set a hearing on Robinson's revocation petition for April 14, 2022. The prosecutor subpoenaed Marrero, who said she would come but failed to appear. The prosecutor advised the court that Marrero had again recanted and the prosecutor might have *Jencks* material. Ultimately, the district court agreed to continue Robinson's revocation hearing.

Before doing so, the district court judge made some comments that Marrero claims are inconsistent with what the same judge said in her later revocation hearing when he found Marrero untruthful. We list them. After reviewing the body camera footage, the district court observed that: (1) there was "undisputed evidence . . . that [Robinson] beat her"; (2) "there [was] sufficient evidence for [the court] to find by a preponderance that [Robinson] committed battery against Ms. Marrero"; and (3) Marrero's recantation "would not change that" because it was "not uncommon for a battered woman to do that."

After the probation officer's testimony, the district court said: (1) it had "no doubt" that Robinson beat Marrero on July 2,

2019, February 9, 2020, and January 8, 2022; (2) stated it was "very obvious" that Robinson controlled Marrero, that he "beat on her" and then "ha[d] her recant"; and (3) it was "inclined to find that there's a violation" and to revoke Robinson's supervised release.

Nonetheless, the district court continued Robinson's revocation hearing. Yet, concerned about their three-year-old daughter's exposure to domestic violence, the district court ordered Robinson to have no contact with Marrero.

### F. Marrero's April 14, 2022 Car Accident and Arrest

As it turned out, on the day of Robinson's April 14 revocation hearing, Marrero was in a car accident. Marrero was speeding and driving recklessly when she rear-ended a U-Haul trailer, left the I-85 highway, and drove into a ravine. In her car, a state trooper found a "UPass device" that is "used to cheat on urinalysis tests." Another state trooper transported Marrero in his car and later found an aspirin bottle containing methamphetamine where she was sitting. The state trooper arrested Marrero and obtained a blood sample. The blood test confirmed methamphetamine was in Marrero's system.

### G. Petition to Revoke Marrero's Supervised Release

The probation officer filed a petition for revocation of Marrero's supervised release, which was twice amended. The second amended petition alleged numerous violations.

As to her car accident, the petition charged that Marrero committed ten state offenses: (1) possessing a Schedule III

controlled substance; (2) possessing drugs not in their original container; (3) failing to maintain a lane; (4) did not exercise due care; (5) following another vehicle too closely; (6) driving on an expired tag; (7) driving too fast for conditions; (8) speeding; (9) driving without a license; and (10) driving under the influence of a drug.

As to Marrero's false reports of domestic abuse, the petition charged that Marrero: (11) failed to answer truthfully her probation officer's questions about her January 8, 2022 abuse report to police; and (12) committed the state offenses of falsely reporting a crime on February 9, 2020 and January 8, 2022.

As to Marrero's drug use, the petition alleged that Marrero: (13) failed to submit to drug testing eight times from December 2021 to July 2022; (14) unlawfully used methamphetamine based on positive drug tests on April 14 and July 6, 2022; (15) failed to report on June 9, 2022 for an already missed drug test; and (16) failed to participate in weekly substance abuse counseling on June 15 and July 8, 2022.

When Marrero did not appear at her July 26, 2022, revocation hearing, the district court issued a bench warrant. Marrero was arrested.

## H. Marrero's December 5, 2022 Revocation Hearing

At the revocation hearing, the government withdrew Violations 11 and 12 about Marrero's false crime reports to the probation officer and police. The prosecutor explained that, although Marrero admitted lying to police, she was not sufficiently

credible to prove those violations because Marrero had changed her story several times. The district court questioned the government's decision, suggesting it was giving up and "taking the easier path" rather than trying to prove Marrero's false statements using her own admissions. Nonetheless, the district court permitted the government to withdraw Violations 11 and 12.

Although admitting her four drug-use violations, Marrero denied the ten car-accident violations because her case was "still pending in state court." The district court then accepted evidence, including police reports, and heard the probation officer's testimony about the car accident and Marrero's arrest.

The probation officer also testified about Marrero's text messages admitting various lies. In her text messages to the probation officer, Marrero stated that: (1) Robinson beat her, but she understood the probation officer might not believe her because she lied so much; (2) she hit Robinson first during one domestic incident; (3) she lied to the police after another incident because she knew she was going to jail for violating the GPS-monitoring term of her supervised release; (4) she faked a recorded telephone call with Robinson (while he was in custody) that was played at his revocation hearing to help him beat the battery charge; and (5) she lied about not living with Robinson when his bond condition prohibited contact with Marrero.

Marrero objected to the government's questions about her text messages because it had withdrawn Violations 11 and 12 about her false crime reports. The government responded that the

district court could still consider Marrero's "pattern of manipulation and dishonesty." Although overruling Marrero's objection, the district court agreed with Marrero that the text evidence was no longer relevant, and the government was just trying to make Marrero look bad. The district court said it could "compartmentalize and decide what I think I can consider." In this revocation-sentence appeal, Marrero does not challenge this evidentiary ruling.

Ultimately, the district court found that the government proved the ten car-accident violations and the four drug-use violations. The district court opined that the government probably could have proven the two withdrawn violations (11 and 12) about false reports. The district court said it "regret[ted] the fact that the government ha[d] decided not to do that and to allow somebody who is, by all accounts, fundamentally untrustworthy to evade being held accountable for their lies." The district court acknowledged that "in the end, we just can't tell which one is a lie because [Marrero is] such a big liar . . . that makes a lot of false statements and we can't tell which ones are the false statements." The district court continued that "it sure undermines the process when you can just tell so many lies that eventually you become immune to any prosecution or supervised release violation for lying."

As to the revocation sentence, the district court found that the advisory guidelines range was 18 to 24 months' imprisonment, with a 36-month statutory maximum. The parties jointly

requested that Marrero be released on bond to attend a methamphetamine treatment program. The government acknowledged Marrero's serious violations but argued that drug treatment afforded the most likely long-term protection for the public against Marrero's severe drug addiction.

In mitigation, Marrero stressed her difficult childhood, during which both parents died from HIV-related complications, her teenage addiction to methamphetamine, and Robinson's domestic abuse. Marrero said she relapsed in January 2022 when she learned Robinson had "cheated on her on Christmas Eve," and "it was a spiral from there."

Marrero's defense counsel acknowledged Marrero's calling the police, recanting, and failing to appear in court. But defense counsel pointed out that at Robinson's April 14, 2022, revocation hearing, the district court repeatedly said it believed Marrero's abuse allegations were true and that abused women often recant and refuse to proceed with prosecution. While Marrero may not have been truthful with her probation officer, defense counsel contended that Robinson threatened and manipulated her and used their child as leverage over her.

The district court responded that Marrero "put too much" emphasis on its statements at Robinson's April 14, 2022, revocation hearing. The district court explained that, at Robinson's revocation hearing, it was dealing with the government's reluctance to present evidence of "a clearly toxic domestic relationship, in which there [was] pretty strong video [evidence] of abuse, maybe going both

ways, all of which [was] done in the presence of their daughter." The district court clarified that at Robinson's hearing, it had not "reached a final decision that Ms. Marrero had been truthful when she reported [Robinson]" because the hearing was postponed. The district court said it did not know now "where [it] would have gone that day had [it] made a decision as to whether or not Mr. Robinson actually abused Ms. Marrero." The court stressed that the parties should not "read too much into my strong words to Mr. Robinson when I felt like I was trying to make sure that everybody understood the importance of them being away from each other because of the [parties'] daughter."

In allocution, Marrero apologized for her and Robinson's "madness" and accepted responsibility for using drugs. She had turned to drugs to deal with her experiences with Robinson and promised she would not get high again for her daughter's sake. Marrero asked the district court to give her another chance and then give her the maximum sentence if she failed.

The district court asked why the prosecutor believed Marrero would now comply with a drug-treatment requirement. The prosecutor responded that she was not sure Marrero would comply and that "[i]t's really more of a hope."

The district court said it was "perplexed" by the government's position that Marrero was a good candidate for drug treatment. The district court asked for the probation officer's recommendation. The probation officer recommended a prison sentence at the high end of the advisory guidelines range. The

probation officer explained that the government and probation office had invested heavily in Marrero's recovery, including the Bureau of Prisons' 500-hour drug treatment program; multiple outpatient drug programs; two six-month drug-screening programs; location monitoring; a cognitive skills program; and a 12-month sentence after her last revocation, none of which had changed her conduct.

## I. District Court's Explanation of the Sentence

After considering the relevant factors under 18 U.S.C. §§ 3582 and 3553(a), the district court imposed a 24-month sentence. The district court rejected the parties' request to release Marrero on bond to obtain drug treatment. The district court said it did not expect Marrero to do anything other than what she had done in the past, which included not obtaining the required drug treatment, not following her probation officer's instructions, not meeting other obligations of supervision, and failing to appear for her revocation hearing, which resulted in a bench warrant. The district court also recalled that when Marrero failed to appear at Robinson's April 14, 2022, revocation hearing, "she was calling her lawyer and saying she was near the courthouse, when she was actually racing down the highway somewhere else."

The district court expressed consternation at the government's view that Marrero could be trusted to get treatment, finding Marrero was "fundamentally untrustworthy," "manipulative," "dangerous," and "selfish." The district court

concluded Marrero had shown she did not want, and was incapable of receiving, help.

As for the choice of a 24-month prison term, the district court stressed that Marrero was "stoned on meth when she was driving" and "there needs to be protection of the public immediately from Ms. Marrero." The district court opined that there was no way to deter Marrero and protect the public merely by allowing her to get treatment again. The district court discounted Marrero's claim that her problems started with Robinson, noting she had an extensive criminal history before she met him. Marrero already served a 78-month sentence and a 12-month revocation sentence, and neither sentence had deterred her. To the district court, "the question [was] whether or not the statutory maximum [of 36 months] was appropriate," but the district court decided to "follow the guidelines" of 24 months.

Marrero's only objection was "for reasonableness of the sentence."

## II.  DISCUSSION

### A.  Plain Error Review

On appeal, Marrero's argues that her 24-month sentence is unreasonable because the district court was biased against her and should have disqualified itself. Marrero did not raise this recusal issue at the revocation hearing. Instead, Marrero objected only to the "reasonableness" of her sentence. She did not raise any issue as to the district court's impartiality or move to disqualify the district court judge. Marrero's general objection to the

reasonableness of her sentence was not sufficient to preserve a recusal challenge.

Marrero contends that she adequately raised the recusal issue when her defense counsel pointed out that the district court previously found Marrero's claims of domestic abuse credible during Robinson's revocation hearing. We disagree. Defense counsel's observation on this point was far from enough to alert the district court that Marrero was raising a claim of personal bias requiring recusal. *See United States v. Brown*, 934 F.3d 1278, 1306 (11th Cir. 2019) ("[T]o preserve an objection to a sentencing determination, a party must raise that point in such clear and simple language that the trial court may not misunderstand it.").

Alternatively, Marrero argues that she was not required to move for recusal because the district court judge did not reveal his bias until he pronounced Marrero's sentence. This ignores that after the district court pronounced the sentence, Marrero could have raised bias or recusal but did not do so.

Because Marrero raises this recusal issue for the first time on appeal, our review is for plain error. *See United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014); *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004) (reviewing for plain error, rather than abuse of discretion, a district court's failure to recuse sua sponte based on alleged bias). To show plain error, the defendant must show (1) that the district court erred; (2) that the error was plain; and (3) that the error affected her substantial rights. *Vandergrift*, 754 F.3d at 1307. If these three conditions are met, we decide whether

the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

## B. Reasonableness of the Sentence

A district court may revoke a defendant's supervised release term and impose a term of imprisonment if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). Before imposing a revocation sentence, the district court must consider certain factors in 18 U.S.C. § 3553(a), as well as the policy statements in Chapter 7 of the Sentencing Guidelines, including non-binding ranges of imprisonment. *Id.* § 3583(e); *United States v. Silva*, 443 F.3d 795, 799 (11th Cir. 2006).

Ordinarily, we review such a sentence for reasonableness, applying the deferential abuse of discretion standard. *Vandergrift*, 754 F.3d at 1307. Under this standard, we employ a two-step process, first examining whether the district court committed any significant procedural error and then whether the sentence is substantively unreasonable in light of the relevant § 3553(a) factors and the totality of the circumstances. *United States v. Trailer*, 827 F.3d 933, 335-36 (11th Cir. 2016). At both steps, the party challenging the sentence has the burden of showing it is unreasonable. *Id.*

Marrero's sole argument—that the district court should have recused based on personal bias—is a claim of procedural error that we review for procedural reasonableness. And in Marrero's appeal we review that claim only for plain error.

## C. Marrero's Recusal Claim

### 1. 28 U.S.C. § 455

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The question under § 455(a) "is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013) (quotation marks omitted).

In addition, under 28 U.S.C. § 455(b), a judge must recuse himself where, among other things, "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). "The bias or prejudice must be personal and extrajudicial; it must derive from something other than that which the judge learned by participating in the case." *United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007) (quotation marks omitted). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current . . . [or] prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994); *see also Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) ("[E]xcept where pervasive bias is shown, a judge's rulings in the same or a related case are not a sufficient basis for recusal."). "Thus, judicial remarks during the course of a trial that

are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555, 114 S. Ct. at 1157.

### 2. Analysis of Marrero's Claim

Marrero contends the district court demonstrated personal bias when it found she was "an aggressor" and "was dishonest and manipulative about her being the victim of domestic abuse by her husband." Marrero claims this finding is inconsistent with and "fundamentally opposed" to the district court's earlier finding at Robinson's revocation hearing that Marrero "was a victim of domestic abuse at th[e] hands of her husband."

There is a threshold flaw with Marrero's recusal claim. Marrero mischaracterizes the district court's findings at her own revocation hearing. As we read the transcript of her hearing, the district court did not find that Marrero lied about being a domestic abuse victim. Nor did it find that Marrero was "an aggressor" in the domestic abuse incidents with Robinson. At most, the district court observed that "pretty strong video" evidence of abuse, "maybe going both ways," was presented at Robinson's revocation hearing, but the court also stated it did not know what it would have found at Robinson's revocation hearing had it been necessary to do so.

To be sure, the district court allowed the government to ask the probation officer about the texts, domestic abuse incidents, and Marrero's changing stories. Yet, the court agreed with Marrero that whether she had lied to either the police or her probation

officer about those abuse incidents was not relevant given that the government had withdrawn Violations 11 and 12. The district court also stated that it could "compartmentalize" what it could and could not consider. Although dismayed by the prosecutor's decision to withdraw Violations 11 and 12, the district court did not make any findings about whether Marrero lied about Robinson's abuse to police or her probation officer.

Rather, the district court found, based on Marrero's *other* well-proven conduct while on supervision, that she was *generally* too dishonest and manipulative to be trusted to comply with a plan of more drug treatment. The district court noted that: (1) Marrero's prior revocation resulted from positive drug tests and her attempt to manipulate a urine sample; (2) Marrero lied to her attorney about being near the courthouse on April 14, 2022; (3) Marrero previously failed to obtain required drug treatment, to follow her probation officer's instructions or comply with her other obligations of supervision; and (4) Marrero did not appear in court even when under subpoena. The district court described all of this conduct as "blatant untruthfulness" and "absurd manipulation of people."

On the merits, Marrero cannot show the district court abused its discretion, much less plainly erred, by failing to recuse. As to § 455(a), a fully informed, objective lay observer would not have a significant doubt about the district court's impartiality. At Marrero's revocation hearing, ample evidence established that, apart from her abuse reports, Marrero's repeated violations of her

supervised release conditions included dishonest and manipulative conduct and breaches of trust.

For example, Marrero's 2020 violations included, among other things, positive drug tests, tampering with a urine sample, not complying with her home detention program, and failing to participate in drug treatment and testing.

Marrero's deceptive behavior continued with her new violations in 2022. Although under subpoena, Marrero did not appear at Robinson's revocation hearing. Marrero also lied to her own attorney (who was present at the hearing) that she was driving to the courthouse. Instead, she was driving under the influence of methamphetamine on an interstate highway, where she caused a serious accident. A state trooper even found in Marrero's car a UPass device, which is used to avoid positive drug tests. After transporting Marrero, the state trooper found a bottle of methamphetamine in his vehicle.

Later, Marrero sent text messages to her probation officer about how she and Robinson recorded a fake jail call and how she had lied about not living with Robinson while the court ordered him to have no contact with her.

It is patently clear here that the district court's comments—that Marrero was fundamentally untrustworthy, manipulative, dangerous, and selfish and could not be trusted to comply with a drug treatment requirement—were supported by the evidence and would not cause an objective, fully informed lay observer to question the district court's impartiality.

As to § 455(b), the district court's opinion of Marrero's trustworthiness was properly formed based on information it learned during Marrero's and Robinson's revocation proceedings. The district court's opinion did not display any kind of "deep-seated . . . antagonism that would make fair judgment impossible." *See Liteky,* 510 U.S. at 555, 114 S. Ct. at 1157. And the district court's comments were certainly not extrajudicial. *See Amedeo*, 487 F.3d at 828.

Accordingly, Marrero has not shown that her 24-month revocation sentence is procedurally unreasonable.[1]

**AFFIRMED.**

---

[1] Marrero's counseled brief does not argue that her 24-month sentence is substantively unreasonable. But even if it had, we would have little trouble concluding that the district court's choice of a 24-month sentence was reasonable given the extent and severity of Marrero's violations.