PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/29/99
THOMAS K. KAHN
CLERK

_____

No. 95-8107

_____

D. C. Docket No. CV293-88

ROBERT D. MASTROIANNI,

Plaintiff-Appellee,

versus

MICHAEL J. BOWERS,
PATRICK D. DEERING, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(April 29, 1999)**

ON PETITION FOR REHEARING

Before HATCHETT, Chief Judge, BIRCH, Circuit Judge, and GODBOLD, Senior Circuit
Judge.

BIRCH, Circuit Judge:

The previous opinion issued in this case, <u>Mastroianni v. Bowers</u>, 160 F.3d 671 (11th Cir. 1998), is hereby vacated. In its place, on petition for rehearing, we file this revised opinion.

## I. BACKGROUND

Appellants Michael J. Bowers, Patrick D. Deering, Joseph B. Jackson, Jr., and Weyland Yeomans appeal the decision of the district court denying their motions for summary judgment based, in part, on absolute and qualified immunity. We briefly summarize the relevant facts underlying this action.

The events giving rise to this case stem primarily from several investigations conducted by both federal and state authorities into allegedly improper activities by William Smith, the Sheriff of Camden County, Georgia during the years in which these investigations transpired, Mastroianni, a Camden County deputy sheriff, and other members of South Georgia law enforcement. In the spring of 1991, the Brunswick County District Attorney requested that Jackson, an agent of the Georgia Bureau of Investigation ("GBI"), investigate allegations that Mastroianni had planted drugs on several suspects. Jackson assigned Yeomans, also a GBI agent, to head the investigation.

One incident, involving Yeomans' investigation of allegations that Mastroianni had planted drugs on Leo Polumbo, is particularly relevant to this appeal. According to Mastroianni, Mastroianni met Preston Kirkland while Kirkland was in jail. Kirkland agreed to act as an informant for Mastroianni regarding his knowledge of drug-related criminal activities. In this capacity, Kirkland advised Mastroianni that Polumbo was a drug trafficker and that Kirkland had seen marijuana in Polumbo's home on the evening of March 5, 1991. Kirkland also told Mastroianni that Polumbo had asked Kirkland to deliver two ounces of marijuana to Polumbo. The next day, Mastroianni applied for and obtained a search warrant of Polumbo's home. Mastroianni secured from a GBI crime lab two ounces of marijuana and gave it to Kirkland to deliver to Polumbo. Kirkland made the scheduled delivery, leaving the drugs with Polumbo's wife. Shortly thereafter, Mastroianni executed the search warrant and found the marijuana in Polumbo's house. Mastroianni contends that, after Polumbo arrived on the scene and received a Miranda warning, he admitted that the marijuana was his. See Mastroianni Dep. at 45.

Yeomans later testified that his own investigation of these events led him to conclude that Mastroianni's version of Polumbo's arrest was not entirely truthful. Yeomans testified that he obtained evidence that suggested that Mastroianni had

3

prepared a false affidavit in connection with the request for a search warrant of Polumbo's house. See Exh. 88-25 at 9-10.

In 1992, the Georgia Attorney General's office became involved in the investigations of Mastroianni and Smith. Bowers assigned Deering to supervise the investigation and Yeomans briefed Deering as to his findings on several occasions. Mastroianni asserts that both Jackson and Yeomans interviewed him in connection with the Polumbo matter and repeatedly intimated that they would cease their investigation if he would provide incriminating information against Sheriff Smith, which Mastroianni refused to do. See Mastroianni Dep. at 177, 120.

In July 1992, Deering filed a notice of indictment against Mastroianni, alleging that Mastroianni had falsely arrested Leo Polumbo and another individual, John Glover, and had perjured himself in the affidavit filed in support of a search warrant of Polumbo's home. Yeomans testified before the grand jury and stated, inter alia, that based on his own investigation, Kirkland and Polumbo did not have an agreement regarding the delivery of marijuana to Polumbo's house. See Exh. 88-25 at 8. Yeomans later conceded in a deposition that Polumbo had told him that he and Kirkland did, in fact, have an agreement for the delivery of marijuana to Polumbo's home; Yeomans added, however, that he did not find Polumbo to be credible. See Yeomans Dep. at 68-69. The grand jury indicted Mastroianni on one

4

count of falsely imprisoning Polumbo. Mastroianni was arrested on July 17, 1992, pursuant to a bench warrant and released on $5,000.00 bond that same day. On April 3, 1993, Deering and Bowers formally announced that the Attorney General's office would not pursue the charge against Mastroianni, and a nolle prosequi was entered with respect to the case.

Mastroianni subsequently filed a complaint against the defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, and alleged, inter alia, that Bowers, Deering, Jackson, and Yeomans had violated his constitutional rights to be free from malicious, bad-faith prosecution, abuse of process, false arrest, and the knowing use of perjured testimony. The district court initially dismissed Mastroianni's claim involving the use of false or perjured testimony as duplicative of the malicious prosecution claim. The court subsequently granted summary judgment in favor of the defendants on Mastroianni's claims of false imprisonment, abuse of process, malicious prosecution, and conspiracy to commit the foregoing acts. The court denied the defendants' motion for summary judgment on the claims of false arrest and conspiracy to commit false arrest, and found that with respect to these claims, the defendants were not entitled to either absolute or qualified immunity.

## II. DISCUSSION

We have interlocutory appellate jurisdiction to entertain this appeal from the denial of summary judgment based on absolute and qualified immunity.  See Redd v. City of Enterprise, 140 F.3d 1378, 1380 (11th Cir. 1998) (absolute immunity); Ellis v. Coffee County Bd. of Registrars, 981 F.2d 1185, 1189 (11th Cir. 1993) (qualified immunity).  We review de novo the legal foundations of the district court's decision to deny summary judgment on either of these bases.  See Moniz v. City of Fort Lauderdale, 145 F.3d 1278, 1281 (11th Cir. 1998); Rich v. Dollar, 841 F.2d 1558, 1561 (11th Cir. 1988).

Bowers and Deering claim that they are entitled to absolute prosecutorial immunity for their role in initiating the prosecution and seeking an indictment against Mastroianni.  Yeomans also contends that he is absolutely immune with respect to his testimony before the grand jury.  Jackson argues that Mastroianni has failed to establish a causal link between the alleged constitutional deprivations and Jackson's conduct and, as a result, the complaint should be dismissed against Jackson for failure to state a claim.  Alternatively, Jackson suggests that he is entitled to qualified immunity for his limited role in the events giving rise to this action.

A.  Deering and Bowers

A prosecutor is entitled to absolute immunity for "acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."  Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615, 125 L.Ed.2d 209 (1993).  The Supreme Court has reasoned that qualifying a prosecutor's immunity would disserve the broader public interest by potentially "prevent[ing] the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."  Imbler v. Pachtman, 424 U.S. 409, 427-28, 96 S.Ct. 984, 993-94, 47 L.Ed.2d 128 (1976).  It is important to note, however, that absolute immunity does not necessarily shield a prosecutor from liability when he is performing a function that is not associated with his role as an advocate for the state.  See, e.g., Buckley, 509 U.S. at 276-78, 113 S. Ct. at 2617-18 (prosecutor not acting as an advocate when he held a press conference or allegedly fabricated evidence); Burns v. Reed, 500 U.S. 478, 492-96, 111 S. Ct. 1934, 1942-45, 114 L.Ed.2d 547 (giving legal advice to the police during pretrial investigation not protected by absolute immunity).  As a result, any potential liability that may attach to either Deering or Bowers must derive from actions they took prior to the

7

initiation of the grand jury proceeding.  See Strength v. Hubert, 854 F.2d 421 (11th Cir. 1988).

Here, we find little support for the contention that either Bowers or Deering stepped outside their respective prosecutorial roles and became involved in the Mastroianni investigation prior to Deering's decision to present evidence regarding Mastroianni to the grand jury.  Although Mastroianni suggests that the prosecutors acted beyond the scope of their prosecutorial functions by both participating in the investigatory stages of the case and advising the GBI before bringing the notice of indictment, the record itself does not create a genuine issue of fact or give rise to a reasonable inference that Bowers and Deering engaged in pre-grand jury, pretestimonial conduct that would warrant stripping away their prosecutorial immunity.  Although Mastroianni contends that Deering spoke to newspaper reporters concerning the investigation, the newspaper clippings adduced to support this contention were printed after the date on which the indictment was returned, relate mostly to the prosecutor's decision to drop the charges against Sheriff Smith and Mastroianni, and do not contain or refer to any statements by Bowers or Deering prior to the date of the indictment.  See Exh. 88-27-33.  Deering's deposition testimony, which presents the most comprehensive factual record regarding this case, indicates only that Yeomans briefed Deering on the

Mastroianni matter in conjunction with the GBI's ongoing investigation into corruption in South Georgia law enforcement; as a result of this briefing, Deering decided to present evidence to the grand jury, see Deering Dep. at 175-95, an action that falls within the purview of absolute prosecutorial immunity. Mastroianni admitted at his own deposition that he had no personal knowledge of actions that Bowers or Deering took with respect to the investigation of his case. Mastroianni Dep. at 162-63.

In sum, we conclude that the record does not support the proposition that either Deering or Bowers was involved in this case in its investigative stages to the extent that removal of absolute prosecutorial immunity is warranted. Accordingly, we reverse the district court's decision to deny summary judgment based on absolute immunity as to Bowers and Deering.

B. Jackson and Yeomans

Yeomans argues that, because Mastroianni's claims against him are premised on the contention that Yeomans provided false testimony to the grand jury, Yeomans cannot be held liable for Mastroianni's allegedly false arrest in light of Yeomans' absolute immunity for his testimony before the grand jury. Mastroianni acknowledges that Yeomans is absolutely immune for the substance of

his testimony before the grand jury, but argues that Yeomans and Jackson engaged in a pretestimonial conspiracy to present false evidence, for which neither absolute nor qualified immunity is available.

We turn first to the question of Yeomans' entitlement to absolute immunity. We previously have decided that a witness has absolute immunity from civil liability based on his grand jury testimony. See Strength, 854 F.2d at 425, relying on Briscoe v. LaHue, 460 U.S. 325, 103 S. Ct. 1108, 75 L.Ed.2d 96 (1983). Here, although Mastroianni contends that Yeomans committed numerous acts in furtherance of a conspiracy to present false testimony before the grand jury convened, the record itself supports such an inference only if we consider as evidence Yeomans' testimony as it relates back to Yeomans' pretestimonial acts and statements. As both Briscoe and Strength instruct, however, we are prohibited from using Yeomans' grand jury testimony as a basis to impose civil liability. In this instance, we agree with Yeomans that, as an evidentiary matter, Mastroianni's claims against Yeomans are supportable at this stage only by consideration of the actual contents of Yeomans' allegedly perjured testimony before the grand jury. Because we may not consider such testimony as a factor upon which to base

10

Yeomans' potential liability, we conclude that Yeomans is entitled to absolute immunity for his actions in this case.[1]

Finally, we note that the record leaves ambiguous the extent to which Jackson was involved directly in this case either before or after the grand jury convened. As previously stated, it appears that Jackson served as the initial contact between the GBI and the state Attorney General's office, assigned Yeomans to investigate the allegations against both Mastroianni and Smith, and may have discussed the case at some point with Yeomans (whom he supervised), Deering, and possibly Bowers. The record contains insufficient evidence, however, to

_____

[1]We note that several other circuits have carved out interesting exceptions to the doctrine of absolute witness immunity where the testifying witness is properly characterized as the "complaining witness." In White v. Frank, 855 F.2d 956 (2nd Cir. 1988), for example, the Second Circuit, relying on the Supreme Court's decision in Malley v. Briggs, 475 U.S. 335, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986), found that, where a police officer essentially initiated the prosecution, "his role as a 'complaining witness' render[ed] him liable to the victim under section 1983 . . . and the fact that his testimony at a judicial proceeding may have been the means by which he initiated the prosecution does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution." White, 855 F.2d at 961. Similarly, in Harris v. Roderick, 126 F.3d 1189 (9th Cir. 1997), cert. denied, _ U.S. _, 118 S. Ct. 1051 (1998), the Ninth Circuit concluded that police officers who testified before a grand and petit jury were not absolutely immune with respect to their testimony because (a) they functioned as complaining witnesses and (b) the relevant, allegedly false testimony was necessary to show "the full range of occasions on which [the defendants'] falsehoods were uttered." Id. at 1199. Unlike either White or Harris, however, there has been no factual finding in this case that Yeomans was equivalent to a "complaining witness", nor has Mastroianni suggested on appeal that such a finding would be appropriate. We therefore decline to reach the question of whether this case challenges the previously-delineated limits of our doctrine on absolute witness immunity.

11

support a reasonable inference that Jackson engaged in any actions to further a conspiracy to present false evidence or to falsely arrest Mastroianni. In essence, of the four defendants remaining in this action, there is little in the record to suggest that Jackson ever played a participatory role in the events that Mastroianni alleges occurred. We conclude from this record that, to the extent that Jackson both communicated with members of the Attorney General's office or Yeomans regarding the Mastroianni investigation and acted in his supervisory role with respect to Yeomans, his actions did not violate any established federal right of Mastroianni's of which Jackson should have been aware. Accordingly, we find that Jackson is entitled to qualified immunity for his conduct in this case. See Madiwale v. Saviko, 117 F.3d 1321, 1324 (11th Cir. 1997) ("The applicable law provides that government agents engaged in discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

## III. CONCLUSION

This case presents troubling, contradictory allegations that are not easily resolved by the record. To the extent that Mastroianni's allegations represent an

accurate depiction of events that gave rise to this action, this opinion is not intended to countenance either government overreaching or the single-minded pursuit of possible corruption at the expense of an innocent state employee. We do conclude, however, that the record does not support a reasonable inference that Bowers, Deering, or Yeomans engaged in pretestimonial conduct of such a character that removal of absolute immunity would be appropriate, nor does it permit a reasonable inference that Jackson was sufficiently involved in this case such that he had reason to know that his conduct violated Mastroianni's clearly established rights. We therefore determine that Bowers, Deering, and Yeomans are entitled to absolute immunity, and Jackson is entitled to qualified immunity, from civil liability for their conduct relative to this case. Accordingly, the judgment of the district court is REVERSED.