[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2011
JOHN LEY
CLERK

_____

No. 10-11979
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cv-01013-WSD

DEAN MARK GOTTSCHALK,

Plaintiff-Appellant,

versus

KAREN ANN GOTTSCHALK,
BARBARA MARIE LASSITER,
HON. S. LARK INGRAM, et al.,

Defendants-Appellees,

CASEY CAGLE, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 16, 2011)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Dean Gottschalk appeals the district court's dismissal of his *pro se* civil rights complaint, which was brought pursuant to 42 U.S.C §§ 1983 and 1985 and Georgia state law. On appeal, Gottschalk argues that the district court erred in concluding that he was not entitled to injunctive relief because he had an adequate remedy at law. He also challenges the district court's conclusion that certain of his claims were barred by the *Rooker-Feldman*[1] doctrine. In addition, he asserts that the district court erred in concluding that he had failed to state a claim under § 1983 against the private defendants. He contends that his amended complaint included sufficient factual allegations to show that the private defendants conspired with state actors to violate his constitutional rights. For the reasons stated below, we affirm.[2]

---

[1]*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

[2]Gottschalk also contends that the district court abused its discretion by striking his response to the Woods defendants' motion for judgment on the pleadings. We conclude that the district court did not abuse its discretion by striking Gottschalk's response because the response was untimely and Gottschalk had not moved for an extension of time to file it. Moreover, any error in striking the response was harmless because the district court reviewed Gottschalk's arguments and concluded that they would not have affected the outcome of the case.

## I.

In 2009, Gottschalk filed a *pro se* amended complaint raising a total of 13 claims. Gottschalk named 38 individuals and entities as defendants, including: (1) his ex-wife, Karen Gottschalk; (2) Barbara Lassiter, an attorney; (3) the Honorable C. LaTain Kell, a judge of the Superior Court of Cobb County, Georgia; (4) the Honorable S. Lark Ingram, Chief Judge of the Cobb County Superior Court; (5) Diane Woods, an attorney, and her law firm, Huff, Woods & Hamby ("Woods defendants"); (6) Michael Manely, an attorney, and the Manely Firm, PC; (7) Cobb County, Georgia, and the members of the Cobb County Board of Commissioners; (8) Sonny Perdue, the Governor of the State of Georgia; (9) Thurbert Baker, the Attorney General of the State of Georgia; (10) the members of the Georgia State Board of Examiners of Psychologists; (11) the members of the Georgia Composite Board of Professional Counselors, Social Workers and Marriage and Family Therapists; (12) Dr. Sheri M. Siegel, a clinical psychologist; (13) Emmett Fuller, a licensed professional counselor; (14) Dr. Susan Z. Volentine, a licensed psychologist; (15) Psychological Affiliates, PC, a business entity that, according to the complaint, employed both Dr. Volentine and Fuller; and (16) Larry and Ann Bost, Karen Gottschalk's parents.

Gottschalk's claims were based on the following facts from his complaint. In 1998, Gottschalk married Karen Gottschalk and the couple had two children together. The marriage did not last, however, and the couple divorced in March 2005. Karen Gottschalk was unhappy with the result of the divorce proceedings, so she hired a new attorney, Barbara Lassiter, to represent her.

In April 2006, Karen Gottschalk filed in Cobb County Superior Court a petition for modification of Gottschalk's visitation rights with his children The petition stated that Gottschalk was prone to violence and had been arrested for aggravated assault for threatening another person with a shotgun during a "road rage" incident. In fact, Gottschalk had entered a plea, without admitting guilt, only to the charge of pointing a weapon. Karen Gottschalk also enlisted the help of her parents, Larry and Ann Bost, who followed Gottschalk and reported his activities to law enforcement and to the county zoning board.

The complaint alleged that the Cobb County Superior Court utilizes a "shadow justice" system in child custody cases. The court typically appoints a guardian ad litem, "usually an old, established one that has been doing it for 20 to 30 years, to 'evaluate' the case." The guardian ad litem's report becomes the de facto ruling of the court, and is very difficult for the parties to challenge. The purpose of this procedure is to dispose of family law cases quickly, without the

4

need for a protracted trial. In Gottschalk's case, the presiding judge appointed Diane Woods as a guardian ad litem without a formal request from either side. Woods had served as a guardian ad litem for more than 20 years and judges routinely deferred to her assessment. Woods was given complete access to all of Gottschalk's medical records, including his mental health records, even though those records were privileged under Georgia law.

The complaint further alleged that Woods submitted a motion to have Gottschalk and the children evaluated by a clinical psychologist, Dr. Sheri Siegel. Woods and Dr. Siegel had a long-standing professional relationship. Prior to Gottschalk's evaluation by Dr. Siegel, Karen Gottschalk and Lassiter attempted to influence Dr. Siegel's opinion by sending her "at least 25 pounds" of documentation critical of Gottschalk. Dr. Siegel's final report concluded that Gottschalk did not have any level of clinical pathology to support a diagnosis. Nevertheless, the report contained prejudicial statements about Gottschalk and suggested that he might have "tendencies toward certain ill-defined conditions." At Woods's request, the superior court restricted the circulation of Dr. Siegel's report. The court provided copies of the report to counsel and to Woods, but specified that any further unauthorized distribution of the report would be punishable by contempt.

5

As a result of Dr. Siegel's evaluation, Gottschalk was ordered to undergo therapy with Fuller, a licensed professional counselor. Fuller shared his clinical findings with Woods, who then passed that information on to others. Meanwhile, Karen Gottschalk secretly arranged to have the couple's children evaluated by Dr. Volentine, a psychologist. The purpose of the evaluations was to create a false record suggesting that Gottschalk was a threat to the children. Despite the fact that she had never evaluated Gottschalk, Dr. Volentine told Woods that Gottschalk might have a high-functioning form of Asperger's Disorder and suggested that he be evaluated for that condition. The complaint asserted that Dr. Volentine and Fuller were both associates of Psychological Affiliates, and they discussed Gottschalk's alleged condition in secret.

The complaint asserted that the visitation modification case was set for trial and assigned to Judge Kell. On the morning of the second day of trial, Woods announced in chambers that she had just received information that triggered her obligation to make a mandatory report to the Department of Family and Children's Services. Gottschalk's counsel objected that Woods's statement was unfairly prejudicial, but Judge Kell declined to order a mistrial, and did not allow Gottschalk to question Woods concerning her declaration.

6

During the trial, Gottschalk called Dr. Monty Weinstein as an expert witness. When Gottschalk's counsel began to question Dr. Weinstein concerning problems with the Siegel Report, Judge Kell became angry, and accused Gottschalk and his counsel of illegally distributing the report to Dr. Weinstein. The judge threatened to hold Gottschalk's counsel in contempt. Judge Kell searched Dr. Weinstein's bag and seized certain reports, including a report concerning a test that Dr. Weinstein had administered to Gottschalk.

The complaint alleged that Judge Kell ultimately entered a final order that: (1) required Gottschalk to attend counseling with a psychologist selected by Woods; (2) allowed Woods to talk freely about Gottschalk with the psychologist, in violation of the patient/therapist privilege; (3) imposed supervision on Gottschalk's visits with his children, at Gottschalk's own expense, until such time as Woods was satisfied with his progress; and (4) imposed other restrictions on Gottschalk's association with his children. Gottschalk asserted that Judge Kell had essentially delegated his decision making authority to Woods.

Gottschalk raised 13 causes of action in his federal complaint, including claims under 42 U.S.C. §§ 1983 and 1985 and Georgia state law. He requested both monetary damages and injunctive relief. Gottschalk also sought a declaratory

7

judgment that the Georgia statute providing for modification of a parent's visitation rights, O.C.G.A. § 19-9-3(b), was unconstitutional.

On September 10, 2009, the district court entered an order dismissing some of Gottschalk's claims. First, the court dismissed Gottschalk's § 1983 claims against Dr. Volentine, Lassiter, Larry Bost, Ann Bost, and Karen Gottschalk because the amended complaint failed to allege that any of those defendants had acted under color of state law or had conspired with a state actor to violate Gottschalk's constitutional rights. The court allowed Gottschalk's state-law claims against those defendants to proceed. The court also dismissed Gottschalk's claims against Manely, the Manely Firm, and the Cobb County Board of Commissioners.

The district court later entered a second order that dismissed all of Gottschalk's remaining claims. The court first addressed Gottschalk's claims against the state defendants. To the extent that Gottschalk was suing Judge Kell in his individual capacity, the court concluded that Judge Kell was entitled to judicial immunity. To the extent that Gottschalk was asserting claims against Judge Kell in his official capacity, the court observed that his request for monetary damages was barred by the Eleventh Amendment. The court also determined that Gottschalk was not entitled to injunctive relief against Judge Kell because

8

Gottschalk had an adequate remedy at law. Specifically, the court observed that Gottschalk had filed an appeal in state court and was contesting Judge Kell's order in that proceeding.

Next, to the extent that Gottschalk was challenging the orders entered by Judge Kell, the district court concluded that his clams were barred by the *Rooker-Feldman* doctrine. The court pointed out that Gottschalk could have raised his constitutional claims in the state court proceeding and that those issues were inextricably intertwined with the state court judgment. The court further explained that Gottschalk's constitutional challenge to O.C.G.A. § 19-9-3(b) was barred by the *Rooker-Feldman* doctrine because he essentially was challenging the manner in which the visitation modification proceeding was conducted, the substance of the state court's order, and his continuing obligation to comply with that order.

The district court also dismissed Gottschalk's § 1983 claims against Dr. Siegel, Dr. Volentine, Fuller, Psychological Affiliates, and Woods. The court concluded that none of those defendants were state actors. In addition, the court concluded that the amended complaint did not state a conspiracy claim against those defendants under § 1983 because it did not include any allegations showing that they had entered into an agreement with a state actor to violate Gottschalk's

9

constitutional rights. The district court additionally concluded that Gottschalk had failed to state a claim for relief against Governor Perdue, Attorney General Baker, Chief Judge Ingram, the Georgia State Board of Examiners of Psychologists and the Georgia Composite Board of Professional Counselors. In light of the fact that all of Gottschalk's federal claims had been dismissed, the district court declined to exercise supplemental jurisdiction over his state law claims, and dismissed those claims without prejudice.

II.

A district court's denial of injunctive relief is reviewed for an abuse of discretion. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009). To establish that an injunction is needed, a plaintiff must show that: (1) there was a legal violation; (2) there is a serious risk of continuing irreparable injury if an injunction is not granted; and (3) there are no adequate remedies at law. *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). We have explained that a plaintiff has adequate remedies at law if he is able to file an appeal or seek an extraordinary writ. *Id.* at 1242-43.

In this case, Gottschalk was not entitled to injunctive relief because he had an adequate remedy at law—namely, he could appeal the superior court's order to the Georgia Court of Appeals. The fact that his case was tried before a judge

rather than a jury, and the fact that the superior court applied a low burden of proof, do not make the appeal process an ineffective remedy. In addition, the delays in the appellate process, and the fact that the superior court did not stay its order pending the Court of Appeals's decision, do not mean that he will be unable to obtain relief on appeal. Once Gottschalk's appeal is heard, the Georgia Court of Appeals will have the power to consider his constitutional claims and to set aside the state court's order if it concludes that his constitutional rights have been violated. Because Gottschalk had an adequate remedy at law, the district court did not abuse its discretion in denying his request for injunctive relief. *See Bolin,* 225 F.3d at 1242-43; *Common Cause/Georgia*, 554 F.3d at 1349.

III.

We review *de novo* a district court's conclusion that the *Rooker-Feldman* doctrine deprives it of subject matter jurisdiction over a case. *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009). The *Rooker-Feldman* doctrine is a jurisdictional rule that precludes lower federal courts from reviewing state court judgments. *Id.* The Supreme Court has explained that the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

11

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-22, 161 L.Ed.2d 454 (2005). We have held that the *Rooker-Feldman* doctrine does not apply if the plaintiff's state-court appeal was still pending at the time when the plaintiff filed his complaint in federal court. *Id*. at 1279.

Here, Gottschalk's state court appeal was still pending at the time when he filed his federal complaint. Therefore, the district court erred in concluding that his claim for injunctive relief against Judge Kell, and his claim that O.C.G.A. § 19-9-3(b) was unconstitutional, were barred by the *Rooker-Feldman* doctrine. S*ee Nicholson*, 558 F.3d at 1279. Nevertheless, we may affirm the district court on any ground supported by the record. *Green v. Jefferson County Com'n*, 563 F.3d 1243, 1245 n.3 (11th Cir. 2009). As described above, the district court properly denied Gottschalk's request for an injunction against Judge Kell's order because Gottschalk had an adequate remedy at law, so we affirm the dismissal of that claim.

In addition, Gottschalk's constitutional challenge to O.C.G.A. § 19-9-3(b) failed to state a claim upon which relief could be granted. His argument was that O.C.G.A. § 19-9-3(b) violates substantive due process because it permits a superior court to modify visitation rights even if there has been no material change in conditions. Gottschalk is correct that the due process clause of the Fourteenth

12

Amendment protects a parent's fundamental right to participate in the care, custody, and management of their children. *See, e.g., Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 2159-60, 68 L.Ed.2d 640 (1981); *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). Nevertheless, the Supreme Court has also recognized that the law of domestic relations has traditionally been left to the states. *Cf. Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 12-13, 124 S.Ct. 2301, 2309, 159 L.Ed.2d 98 (2004). Neither the Supreme Court nor this Court has held that a state must impose a specific standard of proof for modification of visitation rights. Accordingly, we conclude that Gottschalk's complaint failed to show that O.C.G.A. § 19-9-3 violates substantive due process.

IV.

We review a dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) *de novo,* accepting the factual allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). To survive a motion to dismiss, a complaint must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial

13

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The complaint need not include detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-1965.

In order to state a claim under § 1983, the plaintiff must show "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). A private individual acts under color of state law for purposes of § 1983 when he conspires with state actors to violate the plaintiff's constitutional rights. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). To establish a *prima facie* case of conspiracy under § 1983, the plaintiff must show that the defendants reached an understanding to violate his constitutional rights. *Id.* The plaintiff need not produce a "smoking gun," but he must provide "some evidence of agreement between the defendants." *Id.* at 1283-84. The existence of a § 1983 conspiracy can be inferred from the defendants' actions. *See Burrell v. Board of Trustees of Ga. Military College*, 970 F.2d 785, 788-89

14

(11th Cir. 1992) (explaining that a plaintiff may establish a *prima facie* case of conspiracy under § 1983 by relying on circumstantial evidence).

In determining whether a § 1983 conspiracy exists, a court cannot consider any acts for which the defendants had absolute immunity. In *Mastroianni v. Bowers*, 173 F.3d 1363 (11th Cir. 1999), the plaintiff sought to use a witness's grand jury testimony, for which the witness had absolute immunity, as proof that the witness had entered into a pre-testimonial conspiracy to present false evidence. *Id.* at 1367. We held that the witness's testimony could not be used as a basis for imposing civil liability, even if it was only being used to show the existence of a pre-testimonial conspiracy for which the witness did not have immunity. *Id*. Similarly, in *Rowe*, we held that a prosecutor's actions during trial, for which he had absolute immunity, could not be used to prove that the prosecutor entered into a pre-trial conspiracy to violate the defendant's constitutional rights. *Rowe*, 279 F.3d at 1282.

In this case, Gottschalk does not challenge the district court's conclusion that the various private defendants, when considered individually, were not state actors for purposes of § 1983. Instead, he argues that the private defendants acted under color of state law because they conspired with state actors to violate his constitutional rights. Gottschalk is correct that a conspiratorial agreement can be

inferred from the actions of the individuals who are parties to the conspiracy. *See Burrell*, 972 F.2d at 788-89. Here, however, the factual allegations in Gottschalk's complaint did not establish that the private defendants were acting in concert. The fact that Lassiter, Karen Gottschalk, the Bosts, Dr. Siegel, Dr. Volentine, and Fuller all took certain actions that were adverse to Gottschalk does not, in and of itself, show that their actions were part of a common scheme or plan. Accordingly, Gottschalk's complaint failed to allege that the defendants entered into an agreement to violate his constitutional rights. *See Rowe*, 279 F.3d at 1283-84.

Even if the complaint had established some level of agreement between the private defendants, it did not show that a state actor was a party to the conspiracy. The only state official whom Gottschalk directly connected to the constitutional violations was Judge Kell. All of the factual allegations against Judge Kell related to his actions during trial and his rulings in the case. Those allegations attempt to show that Judge Kell acted unreasonably and unfairly, but they do not establish that he had reached a prior agreement with the private defendants to deprive Gottschalk of his right to procedural and substantive due process. *See Rowe*, 279 F.3d at 1283-84.

16

Moreover, Judge Kell's rulings in the case cannot even be considered in determining whether he had entered into a § 1983 conspiracy because he had absolute judicial immunity for those actions. *See Mastroianni*, 173 F.3d at 1367; *Rowe*, 279 F.3d at 1282. Although *Mastroiani* and *Rowe* involved witness immunity and prosecutorial immunity, the reasoning of those decisions applies with equal force in the context of judicial immunity. Because Gottschalk's complaint did not set forth "some evidence of agreement" between Judge Kell and the private defendants, the district court correctly concluded that Gottschalk had failed to state a § 1983 conspiracy claim. *Rowe*, 279 F.3d at 1283-84.

Accordingly, after review of the record and the parties briefs, we affirm.

**AFFIRMED.**