[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15327
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-22768-MGC

CARLOS ANTONIO ORTEGA BONILLA,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,
ANDREA HOFFMAN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 20, 2016)

Before TJOFLAT, HULL and JILL PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Carlos Antonio Ortega Bonilla appeals the district court's dismissal of his complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Bonilla asserted claims under the Federal Tort Claims Act ("FTCA") and Bivens[1] against the United States and Assistant United States Attorney Andrea Hoffman ("the Defendants") arising out of the arrest, detention, and prosecution of Bonilla for his alleged involvement in an international drug smuggling operation. After review, we affirm.

## I.    BACKGROUND FACTS

We recount below the relevant facts by accepting the allegations in the complaint as true and construing them in the light most favorable to Bonilla. Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007).

### A.    Bonilla's Background and Social Status

Bonilla, a 64-year-old Colombian citizen, was a well-respected member of the Colombian community. Bonilla served as a pilot for Colombia's national airline for over 25 years. Thereafter, Bonilla assumed high-ranking positions for the Colombian government, including serving as the Director of Air Safety for the

---

[1]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971) (establishing that a plaintiff may bring suit directly under the Constitution against federal officers in their individual capacity for constitutional violations).

2

Civil Aviation Authority of Colombia.  In 2004, Bonilla retired from his position as Director, began working as an aviation consultant, and also started a part-time business brokering the sale and lease of airplanes.

## B.    Investigation, Arrest, Detention, and Prosecution of Bonilla

At some point prior to June 2012, the United States initiated an investigation into an international drug smuggling operation occurring in Colombia.  While the investigation was a "highly coordinated" effort between the Drug Enforcement Administration ("DEA") and Colombian law enforcement, the United States was "in charge."  As part of the investigation, DEA agents made monthly payments to Colombian narcotics officers and paid them "bonuses" for their investigative efforts.

On June 28, 2012, Bonilla was extradited to a prison in Florida where a DEA agent arrested Bonilla on suspicion of drug-smuggling activity.  The United States accused Bonilla of selling airplanes to drug traffickers and claimed that phone wiretaps proved as much.  However, the apparently incriminating wiretaps actually demonstrated that Bonilla refused to sell airplanes to people that he suspected were drug traffickers and, according to Bonilla, affirmatively established his innocence.  Bonilla alleged that "the Defendants maliciously and recklessly arrested, prosecuted and detained [him] due to his alleged involvement in a

complex drug smuggling operation . . . in spite of [their] knowledge that he was innocent of any wrongdoing."

The United States Attorney for the Southern District of Florida delegated responsibility for prosecuting Bonilla to Defendant Andrea Hoffman, an Assistant United States Attorney. Bonilla alleged that prosecutor Hoffman unlawfully withheld exculpatory phone wiretaps despite his repeated requests for the disclosure of such evidence. Bonilla also alleged that Hoffman unlawfully withheld evidence proving that the DEA paid "bonuses" to individual Colombian narcotics police officers for their investigative efforts. According to Bonilla, Hoffman tried to "create a case against [him] that simply did not exist," going so far as to represent that a secret witness existed who would testify against him.

In August 2012, the United States dismissed all charges against Bonilla. Bonilla's arrest and detention negatively impacted his family life, mental health, credibility, reputation, and ability to secure employment.

## II.    PROCEDURAL HISTORY

### A.    The Complaint

On July 28, 2014, Bonilla filed a counseled, nine-count complaint in federal district court against the United States of America and Hoffman. Bonilla brought the following claims against only the Defendant United States pursuant to the FTCA: (1) false arrest (Count I); (2) false imprisonment (Count II); (3) malicious

4

prosecution (Count III); (4) abuse of process (Count IV); (5) intentional infliction of emotional distress (Count V); and (6) negligence (Count VI).

Bonilla brought the following claims against only Defendant Hoffman pursuant to Bivens: (1) Constitutional claim under the Fifth Amendment (Count VII); (2) Constitutional claim under the Fourth Amendment (Count VIII); and (3) Constitutional claim for Brady[2] Rule violation (Count IX).

## B.    Dismissal of the Complaint

In a September 20, 2015 order, the district court granted the Defendants' joint motion to dismiss the complaint for failure to state a claim.  The district court concluded that Bonilla's FTCA claims against the Defendant United States were barred by the doctrine of  sovereign immunity because they were based on the actions of Hoffman, a federal prosecutor, who does not qualify as an "investigative or law enforcement officer" within the meaning of 28 U.S.C. § 2680(h).  The district court also concluded that Defendant Hoffman was entitled to absolute immunity from Bonilla's Bivens claims because those claims arose from Hoffman's performance of her prosecutorial duties.  Bonilla appeals the district court's September 20, 2015 dismissal order.

---

[2]Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963) (holding that a defendant's due process rights are violated when the prosecution suppresses material evidence favorable to the defendant).

### III.    DISCUSSION

**A.    Standard of Review**

We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim.  Cinotto v. Delta Air Lines Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).  When evaluating a motion to dismiss, a court looks to see whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015).  This plausibility standard is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.

"A pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).  Indeed, a complaint's factual allegations must be enough "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

**B.     FTCA Claims against the United States**

On appeal, Bonilla argues that the district court erred by dismissing his FTCA claims on sovereign immunity grounds.  We disagree.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994). The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort.  Millbrook v. United States, 569 U.S. ___, ___, 133 S. Ct. 1441, 1443 (2013).  The United States waives sovereign immunity in § 1346(b) of the FTCA, which provides:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  However, 28 U.S.C. § 2680(h) creates an exception to the waiver of sovereign immunity, as well as an exception to that exception, by providing that the waiver in § 1346(b) "shall not apply to":

> [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply

to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

28 U.S.C. § 2680(h).  Thus, while § 2680(h) carves out an exception to the waiver of sovereign immunity with respect to the commission of certain enumerated intentional torts, the United States may still be liable for those torts when federal "investigative or law enforcement officers" commit them.  See id.; see also Nguyen v. United States, 556 F.3d 1244, 1260 (11th Cir. 2009).  Section 2680(h) defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. § 2680(h).

Here, the district court properly dismissed Bonilla's FTCA claims under the doctrine of sovereign immunity.  All of Bonilla's FTCA claims maintain causes of action for intentional torts from which the United States is immune.  Bonilla's false arrest, false imprisonment, malicious prosecution, and abuse of process claims are barred under the plain language of § 2680(h).  See id.  Additionally, Bonilla's negligence and emotional distress claims, though not enumerated in § 2680(h), are still barred because they are derived from the same conduct that forms the basis of the enumerated causes of action.  See Metz v. United States, 788 F.2d 1528, 1534 (11th Cir. 1986) ("[A] cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of

8

action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim.").

Bonilla nevertheless argues that the waiver of sovereign immunity for intentional torts committed by "investigators or law enforcement officers" applies to this case in two ways. First, Bonilla contends that Hoffman's conduct "went far beyond her prosecutorial duties such that she was acting in the role of an investigative or law enforcement officer for purposes of the FTCA." According to Bonilla, the United States does not enjoy sovereign immunity where a federal prosecutor commits certain tortious acts in an investigative or law enforcement capacity.

With respect to Hoffman's conduct, prosecutors do not qualify as "investigative or law enforcement officer[s]" within the meaning of 28 U.S.C. § 2680(h) as they are not empowered to execute searches, seize evidence, or make arrests. See 28 U.S.C. § 2680(h); 28 U.S.C. § 547 (setting out the duties of U.S. Attorneys). Nor does the complaint allege that Hoffman performed any of these functions. Accordingly, based on the allegations in this case, Hoffman does not qualify as an "investigative or law enforcement officer" under the plain meaning of § 2680(h), and sovereign immunity precludes FTCA liability arising from her allegedly tortious conduct.

9

Second, Bonilla argues that, regardless of Hoffman's conduct, the complaint sets forth detailed allegations of tortious misconduct by DEA agents and other federal law enforcement officers.  According to Bonilla, the United States does not enjoy sovereign immunity where DEA agents, who are clearly law enforcement officers, commit certain tortious acts.

With respect to the DEA's conduct, we have no doubt that DEA agents qualify as "federal investigative or law enforcement officer[s]" under § 2680(h), which means that the United States does not enjoy sovereign immunity from claims based on the DEA's commission of certain intentional torts.  See Nguyen, 556 F.3d at 1260.  However, the complaint does not contain sufficiently specific allegations relating to the DEA's actual conduct to state an FTCA claim against the United States.

The complaint alleges numerous instances of misconduct by Hoffman and the United States in general, but contains very few allegations concerning the actual conduct of the DEA or other federal law enforcement officers.  Indeed, Hoffman is the only agent of the United States who the complaint ever identifies by name.  All we can glean from the complaint is that unidentified DEA agents (1) coordinated a drug-smuggling investigation with Colombian law enforcement, (2) arrested Bonilla on June 28, 2012, upon suspicion of drug-smuggling, (3) paid "bonuses" to Colombian narcotics officers for their investigative efforts, and

(4) received from Bonilla's attorney and Colombian agents some evidence tending to exculpate Bonilla. These allegations, accepted as true, do not establish the unlawfulness of Bonilla's arrest and detention and, therefore, do not state a claim for false arrest, false imprisonment, or any of the other related causes of action that form the basis of Bonilla's FTCA claims.[3]  Additionally, none of Bonilla's FTCA counts contain any allegations even mentioning the conduct of the DEA or other federal law enforcement officials.

At most, one could speculate that Bonilla's allegations concerning the "United States" and "U.S. authorities" refer to the actions of the DEA or other federal law enforcement officials. However, complaints that do not "raise a right to relief above the speculative level" will not survive dismissal. See Bell Atl. Corp., 550 U.S. at 555, 127 S. Ct. at 1965.

Ultimately, we are left with nothing more than Bonilla's vague, threadbare, and conclusory allegations concerning the conduct of the DEA, which do not state an FTCA claim against the United States that is plausible on its face. See Surtain, 789 F.3d at 1245; Oxford Asset Mgmt., 297 F.3d at 1188.

In sum, under § 2680(h), sovereign immunity precludes FTCA liability arising from the tortious conduct alleged in the complaint. Hoffman is not an

---

[3]Bonilla's allegation that his attorney and criminal investigator repeatedly provided the DEA with evidence that "unequivocally proved [his] innocence" amounts to nothing more than a "legal conclusion[] masquerading as fact[]" that does not prevent dismissal. Oxford Asset Mgmt., 297 F.3d at 1188.

11

"investigative or law enforcement officer," and while a DEA agent is, the allegations regarding the DEA's conduct is not sufficiently specific to state a claim. Because the complaint does not state a claim against the United States based on the conduct of an "investigative or law enforcement officer," the "investigative or law enforcement officer" exception in § 2680(h) does not apply and the United States enjoys sovereign immunity from Bonilla's FTCA claims.

## C.    Bivens Claims against Hoffman

On appeal, Bonilla also argues that the district court erred by dismissing his Bivens claims against Hoffman under the doctrine of absolute immunity. Bonilla argues that absolute immunity does not protect Hoffman because her misconduct exceeded the scope of her duties as an Assistant United States Attorney. We disagree.

"Prosecutors are . . . entitled to absolute immunity from damages for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the government's case." Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000). "Such absolute immunity extends to a prosecutor's acts undertaken … in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999) (quotation marks omitted) (alteration in original).

12

"[A]bsolute immunity does not necessarily shield a prosecutor from liability when he is performing a function that is not associated with his role as an advocate for the state." Mastroianni v. Bowers, 173 F.3d 1363, 1366 (11th Cir. 1999). For example, absolute immunity is not available where a prosecutor performs an investigative function. See Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004). "A prosecutor functions as an investigator when he searches for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." Id. (quotation marks omitted).

Acts protected by absolute immunity include a prosecutor's "professional evaluation of the evidence assembled by the police." Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615 (1993). Absolute immunity also extends to the "task of evaluating the credibility of the alleged exculpatory information," which "no doubt requires the exercise of prosecutorial discretion." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999) (quotation marks omitted). Additionally, "[i]njury flowing from a procedural due process violation . . . that results from a prosecutor's failure to comply with the Brady rule cannot be redressed by a civil damages action against the prosecutor . . . because the prosecutor is absolutely immune from such liability." Porter v. White, 483 F.3d 1294, 1305 n.8 (11th Cir. 2007).

13

Here, the district court properly dismissed Bonilla's <u>Bivens</u> claims under the doctrine of absolute immunity.  The substance of Bonilla's <u>Bivens</u> claims, as alleged in the complaint, are essentially twofold: (1) Hoffman allegedly violated Bonilla's Fourth and Fifth Amendment rights by ignoring exculpatory evidence and detaining him despite knowledge of his actual innocence, and (2) Hoffman allegedly violated Bonilla's Constitutional rights under <u>Brady</u> by failing to disclose exculpatory evidence during the investigative phase.  Hoffman enjoys absolute immunity from both types of <u>Bivens</u> claims.

Bonilla's first species of <u>Bivens</u> claim concerns the very type of prosecutorial functions traditionally protected by absolute immunity.  Bonilla seeks recovery from Hoffman based on her alleged failure to weigh properly the value of exculpatory evidence collected by the DEA.  But absolute immunity protects prosecutors from liability when evaluating exculpatory evidence and performing a "professional evaluation of the evidence assembled by the police," as Hoffman did here.  <u>See</u> <u>Buckley</u>, 509 U.S. at 273, 113 S. Ct. at 2615; <u>Long</u>, 181 F.3d at 1279.  Additionally, Hoffman's alleged knowledge of Bonilla's actual innocence is both a legal conclusion and an "unwarranted deduction[] of fact[]" that will not prevent dismissal.  <u>Oxford Asset Mgmt.</u>, 297 F.3d at 1188.

Hoffman also enjoys absolute immunity from Bonilla's <u>Bivens</u> claims based on her alleged <u>Brady</u> violations.  Hoffman's alleged failure to comply with <u>Brady</u>

constitutes an exercise of her prosecutorial function and entitles her to absolute immunity. See Porter, 483 F.3d at 1305 n.8. Indeed, when Hoffman told the DEA to "stand down" and not disclose exculpatory wiretap evidence, allegedly in violation of Brady, she was not performing an investigative function. See Rivera, 359 F.3d at 1353. Rather, Hoffman was performing a prosecutorial function, for which she is absolutely immune. See Porter, 483 F.3d at 1305 n.8.

Bonilla's remaining allegations concerning Hoffman's general prosecutorial misconduct amount to nothing more than a claim for malicious prosecution, for which absolute immunity attaches. Jones, 174 F.3d at 1281. Accordingly, Hoffman enjoys absolute immunity from Bonilla's Bivens claims.

## IV.    CONCLUSION

In light of the foregoing, we affirm the district court's dismissal of Bonilla's complaint.

**AFFIRMED.**

15